# WESTERN UNION TELEGRAPH COMPANY *v.* CITY OF RICHMOND.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF VIRGINIA.

No. 195.   Argued March 6, 7, 1912.—Decided April 1, 1912.

A municipal ordinance will not be held unconstitutional as an unreasonable grant of power because it permits the use of streets by a public service corporation only in such manner as is satisfactory to the municipal officers in charge of such streets; and so *held* that an ordinance of the City of Richmond, Virginia, in regard to location and construction of telegraph wires and conduits did not deprive telegraph companies of their property without due process of law.

The act of July 24, 1866, 14 Stat. 221, c. 230, permitting telegraph companies to occupy post-roads is permissive only and not a source of positive rights; it conveys no title in streets or roads, and does not found one by delegating the power to take by eminent domain. *West. Un. Tel. Co.* v. *Penna. R. R. Co.*, 195 U. S. 540.

*Prima facie* a telegraph company, not having the right of eminent domain, must submit to the terms of the owners of property which it desires to occupy, including those imposed by municipalities for use of streets.

*Quære:* Whether by reason of such rights as are given by the act of July 24, 1866, a municipality is restricted to only imposing reasonable terms for the use of its streets by telegraph companies.

It is not unreasonable for a municipality to require as compensation for the use of its streets by telegraph companies a money charge, in this case of two dollars for each pole, and also the right to string a limited number of wires on its poles or to use one of the pipes in the conduit for municipal service; or to require space to be left in conduits for use of third parties on compensation and permission by the city.

The court must assume that a municipality acts within its powers, if it can be authorized to do what it has done.

Charges for use of streets acquiesced in and paid for many years without complaint, will not be declared unreasonable on mere protest.

Where, as in this case, the provisions imposing penalties for non-compliance are separable from the ordinance, it is time enough to file a bill when the attempt is made to apply the penalties oppressively; they cannot be made the basis of a bill until then.

In this case *held* that a provision of a municipal ordinance limiting the use of streets for conduits under the terms imposed for fifteen years with the right of the city to then order the conduits removed does not deprive the telegraph company of its rights under the act of July 24, 1866, the ordinance itself providing that whatever rights the company has under that act shall not be affected.

178 Fed. Rep. 310, affirmed.

THE facts, which involve the constitutionality of an ordinance of the City of Richmond in regard to telegraph and telephone wires, are stated in the opinion.

*Mr. Rush Taggart*, with whom *Mr. A. L. Holladay* was on the brief, for appellant:

The ordinance does not impose definite rules for the

guidance of the telegraph company in the operations of its business within the city, but exposes the operations of the company to the arbitrary direction of the officers of the city without any definite rules to guide the officers in the discharge of their duties.

The telegraph company is subject to such necessary provisions respecting its buildings, poles and wires which the comfort and convenience of the community may require, *West. Un. Tel. Co.* v. *Pendleton*, 122 U. S. 359, but it is not exposed to the arbitrary discretion of any officer of the city with respect to the operations of its lines. Neither the city nor the State can prevent it from operating within their limits by any form of legislation whatever. *Pensacola Tel. Co.* v. *West. Un. Tel. Co.*, 96 U. S. 1; *Baltimore* v. *Radecke*, 49 Maryland, 217; *Anderson* v. *Wellington*, 40 Kansas, 173; *Garrabad* v. *Dering*, 84 Wisconsin, 585; *State Center* v. *Barenstein*, 66 Iowa, 249; *Winthrop* v. *New England Chocolate Co.*, 180 Massachusetts, 464; *Barthet* v. *New Orleans*, 24 Fed. Rep. 363; *Frazee's Case*, 63 Michigan, 396; *Chicago* v. *Trotter*, 136 Illinois, 430; *Lumber Co.* v. *Cicero*, 176 Illinois, 9; *Newton* v. *Belger*, 10 N. E. Rep. 464; *State* v. *Tenant*, 14 S. E. Rep. 387; *Sioux Falls* v. *Kirby*, 60 N. W. Rep. 156; *Boyd* v. *Frankfort*, 77 S. W. Rep. 669; *Omaha Gas Co.* v. *Withnell*, 110 N. W. Rep. 680; *Robison* v. *Miner*, 37 N. W. Rep. 21; *State* v. *Mahner*, 9 So. Rep. 480; *May* v. *People*, 27 Pac. Rep. 1010; *St. Louis* v. *Russell*, 22 S. W. Rep. 470; *Noel* v. *People*, 58 N. E. Rep. 616; *Elkhart* v. *Murray*, 165 Indiana, 304; *Montgomery* v. *West*, 42 So. Rep. 1000.

The ordinance imposes excessive fines and penalties for the failure to obey the arbitrary orders of the city officials in matters concerning which the company has no guide except the direction of these officers. *Ex parte Young*, 209 U. S. 123; *Cotting* v. *Kansas City Stock Yards*, 183 U. S. 79.

The ordinance requires the company to furnish to the city large and extensive facilities for the doing of the city's

business without compensation or reward therefor, and such compulsion is not a legitimate exercise of the police power. For instances in which license fees have been declared unconstitutional or illegal see 2 Dillon on Municipal Corporations, 5th ed., § 661; *State* v. *Bean,* 91 No. Car. 554; *State* v. *Hoboken,* 33 N. J. L. 280; *Telephone Co.* v. *Sheboygan,* 111 Wisconsin, 23; *Muhlenbrinck* v. *Long Branch,* 42 N. J. L. 364; *Van Hook* v. *Selma,* 70 Alabama, 361; *Fort Smith* v. *Ayers,* 43 Arkansas, 82; *New Haven* v. *Water Co.,* 44 Connecticut, 106.

The placing of a cable containing one or a dozen or any greater number of wires within the conduit can require no more work in the issuing of a license therefor, or in the inspection thereof, than if only one wire were placed therein, and in the ordinance in question we have the identical graduation of fees which was the leading reason causing the Connecticut Supreme Court to hold an ordinance void. *Jackson* v. *Newman,* 59 Mississippi, 385; *Baltimore* v. *Harlem Stage Co.,* 59 Maryland, 330; *City of Ottumwa* v. *Zekind,* 64 N. W. Rep. 646; *New York* v. *Hexamer,* 59 App. Div. 4; *State* v. *Glavin,* 34 Atl. Rep. 708; *Welch* v. *Hotchkiss,* 39 Connecticut, 143; *Allegan* v. *Day,* 42 N. W. Rep. 977.

In this case the license charges are made purely as measures for collecting revenue for the city and as a punishment against the telegraph company for endeavoring to protect its rights.

The claim of the city to require reservation of space upon poles for overhead wires cannot be sustained, nor can its demand be sustained that the company, in placing its wires underground, furnish all the material and construct this expensive work and set apart at least one duct for the use of the city free of charge therefor.

The ordinance respecting underground wires requires the company to construct property which may be available for others to use, and which it is not permitted to use

without the consent of the city, and which may never be used.

The ordinance imposes illegal conditions, restrictions, expenses and burdens as conditions of the right to use the streets of the City of Richmond, which right is secured to the telegraph company by the act of Congress of 1866, subject only to the compliance with reasonable police regulations for the protection and convenience of the inhabitants of the city.

Within these underground limits, with manholes placed by the telegraph company at each block, the total cost of inspection in order to ascertain that the conduits are maintained in a safe and proper condition would be practically nothing. The charge of $2.00 per mile, therefore, cannot be maintained upon the pretext of the expense of inspection, because no such expense would be incurred by the city. *West. Un. Tel. Co.* v. *New Hope*, 187 U. S. 419; *Atl. & Pac. Tel. Co.* v. *Philadelphia*, 190 U. S. 161; *Postal Tel. Co.* v. *New Hope*, 192 U. S. 55, do not sustain the contentions of the city in this respect.

The ordinance seeks to put limits upon the right of the telegraph company to use the streets, and to require the abandonment of the use of the streets at the demand of the city, while the act of 1866 secures to the telegraph company the full and unlimited right to use the streets subject only to fair and reasonable regulations by the city. *Pensacola Tel. Co.* v. *West. Un. Tel. Co.*, 96 U. S. 1; *St. Louis* v. *West. Un. Tel. Co.*, 148 U. S. 92; *Leloup* v. *Port of Mobile*, 127 U. S. 640.

The evident design of the preparation and passage of the ordinance was to compel the telegraph and telephone companies affected by it, to submit absolutely to the control of the city within the limits of the city; that is manifest from an examination of practically every section of the ordinance, and the question which we now present is: Can the city thus limit and control the operations of the

telegraph company engaged in interstate commerce agency of the Federal Government, and compel it to submit in all essentials to the terms the city has set forth in this ordinance the same as the City of Richmond has compelled the Southern Bell Telephone Company to submit to it, the latter company not being invested with any of the rights conferred by the act of Congress of July 24, 1866? This question can only be answered in the negative.

The definition as to what constitutes a proper, as distinguished from an improper, delegation of power under the authorities is perhaps not an easy one to make, but it is clear, that, with respect to this ordinance, it is not necessary that a close analysis of the authorities be made in order to discover the dividing line, because this ordinance goes so far beyond what is proper. *United States* v. *Grimaud,* 220 U. S. 506; *Field* v. *Clark,* 143 U. S. 694.

*Mr. H. R. Pollard* for appellee.

MR. JUSTICE HOLMES delivered the opinion to the court.

This is a bill in equity filed on June 21, 1904, to restrain the enforcement of an ordinance of September 10, 1895; codified as chapter 88 of the ordinances of Richmond, and amended March 15, 1902, and December 18, 1903. The plaintiff alleges that the ordinance infringes its rights under the act of July 24, 1866, c. 230, 14 Stat. 221 (Rev. Stats., §§ 5263, *et seq.*), and under Article I, § 8 (the commerce clause), and the Fourteenth Amendment of the Constitution of the United States. The Circuit Court dismissed the bill, 178 Fed. Rep. 310, and the plaintiff appealed. The act of Congress gives to telegraph companies that accept its provisions the right to construct, maintain and operate lines over the post-roads of the United States, such as the streets of Richmond concerned are admitted to be. Rev. Stats., § 3964. Act of March 1,.

1884, c. 9, 23 Stat. 3.  Some of the objections to the ordinance are based upon this statute and some are not; we take them as they come.

By § 1 poles and wires are not to be put up 'until the City Engineer shall have first determined the size, quality, character, number, location, condition, appearance, and manner of erection of ' the same.  By § 4 the Committee on Streets may require permission to be given to others to place upon the poles light current wires which in the Committee's opinion will not unreasonably interfere with the owners' business; terms, if not agreed upon, to be submitted to arbitration.  By § 15 the Chief of the Fire Department and the Superintendent of Fire Alarm and Police Telegraph are to inspect poles and wires, and if a pole is unsafe, or the attachments, or insulations, etc., are unsuitable or unsafe, are to require them to be altered or replaced and removed, with a fine for each day's failure to obey the order.  By § 26 violation of any provision, or failure to obey any requirement made under the ordinance by the City Engineer or the just named Superintendent or Chief, if not specially fined, is to be fined from ten to five hundred dollars a day, by the Police Justice.  Finally by § 28, as amended in 1903, all overhead wires within a certain territory are to be removed, and within two months plans for conduits are to be submitted to the Committee on Streets and Shockoe Creek, showing location, plan, size, construction and material. These plans may be altered or amended by the Committee and when satisfactory to it are to be followed by the owner of the wires in a manner satisfactory to the City Engineer.  The pavements are to be replaced and kept in repair to his satisfaction and the city saved harmless from damages.  The conduits are to provide for an increase of 30 per cent, not to be occupied by third parties without consent of the Committee and compensation, but the wires of the city to be carried free, one duct being

reserved for them. The location, size, shape and sub-division of the conduits, the material and manner of construction, must be satisfactory to the City Engineer, and the work of laying underground conduits is to be under the direction and to the satisfaction of the Superintendent of Fire Alarm and Police Telegraph.

All these provisions are objected to as subjecting the appellant to an arbitrary discretion—in § 1, that of the City Engineer as to the poles; in § 4, that the Committee on Streets as to the use of the poles; in § 15, that of the Chief and Superintendent mentioned as to not only the safety of the poles and wires but the unsuitableness of the latter or their attachments, insulation, or appliances; in § 28, that of the Committee on Streets as to underground plans, that of the Superintendent of Fire Alarm as to laying the conduits, and that of the City Engineer as to the replacement of pavement in the streets, and the carrying out of the plans in all the details just stated. It is argued also that by § 26 the appellant is subjected to further requirements without limit from the officers named, but this argument may be dismissed, the requirements referred to being only those 'made under this chapter,' that is, specifically authorized in the other sections to which we have referred. Again the objections are not to be fortified by those decisions that turn on the power to delegate legislative functions. *United States* v. *Grimaud,* 220 U. S. 506. We have been shown no ground for supposing that the ordinance exceeded the power of the legislature to authorize or of the city to enact, unless it interferes with some special paramount right of the appellant. The bill is brought wholly on the ground that the appellant has such rights that no state legislation can touch. Unless it has them there is nothing in the Constitution of the United States to prevent the grant of these discretionary powers to the committees and officers named. *Davis* v. *Massachusetts,* 167 U. S. 43. *Gundling*

v. *Chicago*, 177 U. S. 183. *Fischer* v. *St. Louis*, 194 U. S. 361, 371. *Prentis* v. *Atlantic Coast Line Co.*, 211 U. S. 210, 225.

The appellant says that it has the right to occupy the streets of Richmond under the act of Congress, and therefore, although subject to reasonable regulation, it cannot be subjected to a discretion guided by no rules. Neither branch of this proposition, as applied to this case, commands our assent. To begin with the end, while it is true that rules are not laid down in terms, they are implied so far as there need to be any. If the Committee and officers do their duty there is no room in the questions left to them for arbitrary whim. They are to exercise their judgment on the suitableness, safety, &c., of the places, poles and wires by the criteria that would be applied by all persons skilled in such affairs who should seek to reconcile the welfare of the public and the instalment of the plant. The objection that other motives may come in is merely that which may be made to all authority, that it may be dishonest, an objection that would make government impossible if it prevailed. It is said that the ordinance should confine the Committee and officers to finding whether required and specified facts exist. But not only is it impossible to set down beforehand every particular fact that may have to be taken into account, but in case of dishonesty it would do no good. We are of opinion that the ordinance is not unreasonable as a grant of arbitrary power. Regulations very like these were upheld, so far as they presented Federal questions, against a company assumed to have a right to use the streets, in *Missouri, ex rel. Laclede Gaslight Co.* v. *Murphy*, 170 U. S. 78, 99. See also *Wilson* v. *Eureka City*, 173 U. S. 32.

In view of what we have said and the appellant's admission that it is subject to reasonable regulation it would be unnecessary to consider its rights under the act of

Congress but for some further complaint that the appellant's property is taken without due process of law. That complaint opens the question what property the appellant has. The act of Congress of course conveyed no title and did not attempt to found one by delegating the power to take by eminent domain. *Western Union Telegraph Co.* v. *Pennsylvania Railroad Co.*, 195 U. S. 540, 574. It made the erection of telegraph lines free to all submitting to its conditions, as against an attempt by a State to exclude them because they were foreign corporations, or because of its wish to erect a monopoly of its own. *Pensacola Telegraph Co.* v. *Western Union Telegraph Co.*, 96 U. S. 1. It has been held to prevent a State from stopping the operation of lines within the act by injunction for failure to pay taxes. *Western Union Telegraph Co.* v. *Attorney General of Massachusetts*, 125 U. S. 530. But except in this negative sense the statute is only permissive, not a source of positive rights. The inability of the State to prohibit the appellant from getting a foothold within its territory, both because of the statute and of its carrying on of commerce among the States, gives the appellant no right to use the soil of the streets, even though post-roads, as against private owners or as against the city or State where it owns the land. *St. Louis* v. *Western Union Telegraph Co.*, 148 U. S. 92, 101. *S. C.*, 149 U. S. 465. *Richmond* v. *Southern Bell Telephone & Telegraph Co.*, 174 U. S. 761, 771. *Atlantic & Pacific Telegraph Co.* v. *Philadelphia*, 190 U. S. 160, 163. *Hudson County Water Co.* v. *McCarter*, 209 U. S. 349, 357.

The only ground of title disclosed by the appellant is the act of 1866, coupled perhaps with the fact that its lines are established. The rights of the city to the streets are left a little vague, but the bill assumes that they are such as to authorize the charge of a reasonable rental on the principle of *St. Louis* v. *Western Union Telegraph Co.*, 148 U. S. 92. Any license that the city may have

granted as owner or representative of the owner of the public easement or otherwise may be assumed to have been revoked, and so far as the city's title is infringed by the appellant nothing appears to limit the city's right to insist upon it, as fully as a private owner might. Leaving the question of title on one side, except so far as to note that the appellant does not show one, and that the city has power to admit it to the highways, the other regulations complained of do not violate the appellant's constitutional rights.

When the appellant without the right to exercise the power of eminent domain desires to occupy land belonging to others, *prima facie* it must submit to their terms. We assume, as we have said, that the city has some interest in the streets that is affected by the presence or by the establishment of conduits or poles. If it demands, as a condition of its assent, as it does by § 6, that positions shall be reserved upon the poles for the city, and by § 28 that provision shall be made for thirty per cent increase and that the city's wires shall be carried free of charge, one duct being reserved for them, it is within its rights. Even assuming, as seems to be implied by some of the language in *St. Louis* v. *Western Union Telegraph Co.*, 148 U. S. 92, 104, 105; *Western Union Telegraph Co.* v. *Attorney General of Massachusetts*, 125 U. S. 530, that in consequence of the act of Congress, the city is restricted to reasonable demands, the foregoing requirements do not seem to us unreasonable in view of the position of the parties. The city must use these poles and conduits or others, and it is not unfair that it should avoid the expense and additional burden of a separate system and insist on getting the help it needs from the system already there. See *Postal Telegraph Cable Co.* v. *Chicopee*, 207 Massachusetts, 341. It is no sufficient objection that from the point of view of rental the burden on certain poles may vary in a proportion different from the value

of those poles. The notion of rental cannot be used thus to restrict the conditions that may be imposed. The conditions are reasonable with reference to the occupation of the streets considered as a whole, and are not made otherwise by the fact that there is also a specific money charge for each pole or underground mile of wire.

The requirement that space be left in the conduits for wires of third parties, to be used upon permission by the city and compensation, §§ 4, 28, is merely another incident of the necessity for insisting upon a single system. It would seem not to be unreasonable for legislation, apart from any question of property rights, to require that a single conduit should contain all the wires under a street. When the legislature also is fixing the terms on which it will yield a property right the validity of the condition becomes doubly clear. So a provision in § 28 for moving or altering conduits at the appellant's expense upon notice from the city that the change is necessary for the construction or repair of gas, sewer, or water mains. These items seem to us as easily justified as the order to put the wires underground, the legality of which the appellant fully admits.

The money charges of two dollars per pole and the same sum per mile of underground wire, are found fault with. §§ 10, 32. Many of the cases relied upon by the appellant are cases turning on the limitations to the powers of the municipality. But, as we have said, this bill is brought on the theory that any such legislation by the State would be bad under the Constitution and act of Congress—not upon the suggestion that the City of Richmond is acting *ultra vires.* If the city could be authorized to do what it has done, we must assume that it is acting within its powers. Taking up the question so limited, we agree with the court below that after the appellant, as is found, has paid the charges without complaint for many years it would require something more

than a mere protest now to induce us to find it unreasonable. The sum is not so great as has been charged and sustained heretofore. *St. Louis* v. *Western Union Telegraph Co.*, 148 U. S. 92, 104. *S. C.*, 149 U. S. 465. *Postal Telegraph Cable Co.* v. *Baltimore*, 156 U. S. 210. *Memphis* v. *Postal Telegraph Cable Co.*, 164 Fed. Rep. 600, 91 C. C. A. 135.

There is the frequently recurring contention that the ordinance is void because of the great penalties that may be incurred in the time necessary to test its legality. Especially mentioned is § 27, as amended in 1902, which imposes a fine of from $100 to $500 for each pole remaining after the time set for their removal, and of from $100 to $500 for every week thereafter. It does not look as if the penalties in this ordinance were established with a view to prevent the appellant from resorting to the Federal courts, nor do we apprehend that an attempt will be made to enforce them in respect to the past. But the penalties are separable from the rest of the ordinance, and if an oppressive application of them should be attempted it will be time enough then for the appellant to file its bill. *United States* v. *Delaware & Hudson Co.*, 213 U. S. 366, 417. *Grenada Lumber Co.* v. *Mississippi*, 217 U. S. 433, 443.

One more objection to the ordinance is found in § 31, which limits the privilege as to the conduits to fifteen years and provides that after that time the city may put such restrictions, conditions and charges as it sees fit, or may order the conduits removed. It seems to be thought that this is an attempt to make the appellant contract itself out of the benefit of the act of Congress. What we have said will show some reason for not so regarding the ordinance—and as an amendment, § 34, adopted since the bill was filed, provides that none of the obligations, &c., of the chapter shall interfere with rights under the act of 1866, the appellant's position would be no worse by reason of its complying with what it cannot help. We think it

unnecessary to discuss the bill in greater detail to show that it cannot be maintained.

*Decree dismissing bill affirmed.*