NEW ENGLAND TELEGRAPH CO. OF MASSACHUSETTS v.
TOWN OF ESSEX.

(District Court, D. Massachusetts. August 14, 1913.)

No. 32 (C. C. 198).

1. TELEGRAPHS AND TELEPHONES (§ 10*)—CONSTRUCTION—STATUTORY PROVI-
SIONS—"POST ROUTES"—"POST ROADS."
Under Act March 1, 1884, c. 9, 23 Stat. 3, providing that all public roads and highways, while kept up and maintained as such, are thereby declared to be post routes, "post routes" means the same as "post roads," as used in Rev. St. § 5263 (U. S. Comp. St. 1901, p. 3579), authorizing telegraph companies to construct, maintain, and operate lines of telegraph over and along any of the post roads of the United States, which have been or may hereafter be declared such by law.
[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 6; Dec. Dig. § 10.*
For other definitions, see Words and Phrases, vol. 6, pp. 5473, 5474.]

2. COMMERCE (§ 28*)—TELEGRAPH LINES—STATUTORY PROVISIONS.
Under Rev. St. § 5263 (U. S. Comp. St. 1901, p. 3579), authorizing tele-graph companies organized under the laws of any state to construct, maintain, and operate lines of telegraph over and along any of the post roads of the United States, and the subsequent sections, providing the conditions upon which such right is to be exercised, a state, or a town within a state, cannot exclude a telegraph company, engaged in trans-mitting interstate, international, and government messages, which has accepted the terms proposed by the national government, even though such company is organized under the laws of that state, since, because of its powers to regulate interstate and foreign commerce, and the opera-tion of the national postal service, the legislation of Congress, so far as it has gone, is supreme.
[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 22; Dec. Dig. § 28.*]

3. TELEGRAPHS AND TELEPHONES (§ 10*)—USE OF HIGHWAYS—STATUTORY PRO-
VISIONS.
Under Rev. St. § 5263 (U. S. Comp. St. 1901, p. 3579), authorizing tele-graph companies to construct, maintain, and operate lines over and along any of the post roads of the United States, the authority thereby granted is merely permissive, and gives no right to use the soil, even of post

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

roads, as against private owners, or as against the state or municipality, where it owns the land, nor is any right of eminent domain included, and the company may be required to make reasonable compensation to the municipality entitled thereto for the occupation of its post roads.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 6; Dec. Dig. § 10.*]

4. COMMERCE (§ 73*)—REGULATION—TAXATION—TELEGRAPH LINES.

Under Rev. St. § 5263 (U. S. Comp. St. 1901, p. 3579), authorizing telegraph companies to construct, maintain, and operate lines of telegraph over and along any of the post roads of the United States, such companies are subject to the taxing power of the state, and to police or other regulations by the state not inconsistent with those established by Congress, provided such taxes or the methods of collecting them are not of such a character as to exclude the company from the state, or stop its business, and are not arbitrary or unreasonable.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 124–134; Dec. Dig. § 73.*]

5. TELEGRAPHS AND TELEPHONES (§ 10*)—USE OF STREETS—REGULATION.

Under Rev. Laws Mass. c. 122, § 1, authorizing telegraph companies to construct lines along the public ways within the state, section 2, providing that the selectmen of a town through which lines of such a company are to pass shall give the company a writing specifying where the poles may be located, the kind of poles, and the height at which and places whereon the wires may run, and that the selectmen may direct any alteration in location or erection of the poles, and in the height of the wires, and section 26, providing that no enjoyment of the privilege of maintaining poles or wires in, upon, or over the land of other persons shall give a legal right to continue the enjoyment of such privilege or raise any presumption of a grant thereof, where a telegraph company constructed its lines along the roads of a town without obtaining a location for its lines from the town authorities, and nearly 20 years afterwards applied to the selectmen for a location in order to make certain repairs, which location was refused by the selectmen, its continued occupation of such roads was not thereafter unlawful; the laws of Massachusetts nowhere penalizing or making illegal the construction of a telegraph line without a permit or specification.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 6; Dec. Dig. § 10.*]

In Equity. Bill for an injunction by the New England Telegraph Company of Massachusetts against the Town of Essex. Heard on pleadings and proofs. Cross-bill dismissed, and permanent injunction issued.

Carver & Blodgett, of Boston, Mass., for complainant.

Frank C. Richardson and William B. Sullivan, both of Boston, Mass., for defendant.

DODGE, Circuit Judge. This bill was filed July 31, 1905. The defendant town has been under a temporary injunction since September 5, 1905, which it has never moved to dissolve. On September 26, 1905, it filed a cross-bill against the plaintiff. This has been followed by an answer and a replication, as has the original bill.

Both plaintiff and defendant are Massachusetts corporations. The plaintiff was incorporated April 7, 1884, "for the purpose of constructing lines of aërial or underground wires of telegraph, both

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

within and without the limits of [the] commonwealth, and owning, constructing, maintaining, and operating lines of aërial or underground electric telegraph, both within and without the limits of said commonwealth, and the owning of interests in such lines," with a capital of $30,000. It is therefore a telegraph company within the meaning of Rev. St. §§ 5263–5269 (U. S. Comp. St. 1901, pp. 3579–3582) which are the laws of the United States under which the controversy between the parties, involving more than $2,000, is said to arise.

Section 5263 has given to any telegraph company, organized under the laws of any state since its enactment, the right to construct, maintain, and operate lines of telegraph over and along any of the post roads of the United States which have been or may hereafter be declared such by law. It provides, however, that such lines shall be so constructed and maintained as not to interfere with the ordinary travel on such post roads.

Section 5266 gives priority over all other business, at such rates as the Postmaster General shall annually fix, to telegrams between the government departments, their officers and agents, in transmission over the lines of any telegraph company having the right of way provided for in section 5263.

Section 5267 gives to the United States the right to purchase all the telegraph lines and property of any company acting under section 5263, at an appraised value to be ascertained according to other provisions contained in the section.

Section 5268 requires the filing of a written acceptance, with the Postmaster General, of the restrictions and obligations required by law, before the exercise by any telegraph company of the powers and privileges conferred by section 5263.

I find no other provisions in the sections referred to material for the purposes of this case. The plaintiff avers that it has filed the acceptance required by section 5268, and has transmitted departmental messages in accordance with section 5266, and has in all other respects complied with the requirements of the sections referred to. These averments are sustained by the evidence.

The following facts appear by admission or from the evidence:

After its incorporation in April, 1884, the plaintiff constructed a telegraph line, about 4 miles in length, consisting of 186 poles and wires thereon, carried through Essex from the line between it and the adjoining town of Hamilton, through highways or roads within Essex known as Western avenue, Main street, and Eastern avenue, to the line between Essex and the adjoining town of Gloucester. The line constructed formed part of a line constructed by the plaintiff through Massachusetts from the Rhode Island line to Rockport, passing on its way through various Massachusetts towns or cities, which need not be specified. At Rockport it connects with a line of telegraph cable to Europe. At the Rhode Island line it connects directly or intermediately with telegraph lines constructed by telegraph companies in alliance with the plaintiff, affording telegraphic communication to points throughout the United States. It was constructed to be, and it has

been since, used as part of a system of lines in connection, affording telegraphic communication between these United States points and Europe, as well as between points on the connected lines within the United States. During the 21 years from 1884 to 1905, the plaintiff maintained and operated the line constructed through Essex as above, without interference on the part of that town. The evidence does not show any interference by this line with the ordinary travel on the roads mentioned.

On June 1, 1905, repairs to the line through Essex having become necessary, and relocation desirable in connection with them, an application for a location through the roads above mentioned was presented to the Essex selectmen. It was stated in the application that the new poles were to occupy practically the positions occupied by the old ones, and that any changes in the present location were to be under the direction of the selectmen. This application was made in the name of the New England Telegraph Company of New York, one of the companies with which the plaintiff was allied in the maintenance and operation of the through line above described. After a hearing, the selectmen voted, on July 10, 1905, not to grant "the New England Telegraph Company" a location. Under date of July 11, 1905, they sent a notice to that effect, addressed to "New England Telegraph Co., 84 State St., Boston, Mass." I find that their refusal to grant the application was not upon the ground that it was applied for in the name of the New England Telegraph Company of New York, instead of in the name of the plaintiff, but was a refusal, upon other grounds below appearing, to grant the plaintiff, or any company connected with it, any location within the town. At a subsequent conference between the selectmen and representatives of the plaintiff, it was stated to the plaintiff, by or on behalf of the selectmen, that they would not grant a location to any company, in any street of the town, unless actually forced to give it, and that they desired to raise the question of the company's rights to be in the town; also that the selectmen wanted the poles taken entirely out of the town, and would prevent construction work by force if necessary. The selectmen or their chairman were asked if there was objection to the repair of the line as it stood, merely replacing old poles with new ones. The reply was that there was objection, and that any work by the company within the town would be stopped.

The temporary injunction issued September 5, 1905, in this case, forbade the town, until the further order of the court, to interfere in any manner with the plaintiff's line or its relocation on the roads and highways then occupied thereby, or with the resetting of its poles, or the making of necessary repairs. The defendant did not appear to oppose the granting of this injunction. The bill asks for a permanent injunction to the same effect.

In the cross-bill, filed by the town on September 26, 1905, it is alleged that the plaintiff's line was erected without obtaining any rights whatever in the highways and roads mentioned, which were alleged and are admitted to be public highways; that the defendant had requested the plaintiff, since its bill was filed, to remove its poles and

wires, which the plaintiff had refused to do; that it was trespassing upon the defendant's highways without right and without authority, and was threatening to continue to do so; that it had, since the preliminary injunction issued, not only repaired its line, but had reset its poles in different locations, and that it had changed its line from its original location. The cross-bill asks that the plaintiff be ordered to remove its poles, and for an injunction forbidding the plaintiff to use its line within Essex for the purposes of its business until it shall have first obtained a franchise from the board of selectmen, as provided by the laws of Massachusetts. In the plaintiff's answer the request and refusal to remove are admitted, also the resetting of a. few poles in different locations. The other allegations are denied. I find, on the evidence, that the admitted changes in the location of some of the poles were only such as were necessary to keep the line in a reasonably safe condition, and that there have been no changes amounting to a change of the location occupied in 1884 and since.

The defendant's contentions are based upon provisions contained in the Revised Laws of Massachusetts. Chapter 122, "Of companies for the transmission of electricity," in section 1, authorizes any company incorporated for the transmission of intelligence by electricity to construct lines for such transmission upon and along the public ways within Massachusetts under the provisions of sections which follow. Section 2 provides that the selectmen of a town through which lines of such a company are to pass "shall give the company a writing specifying where the poles may be located, the kind of poles and the height at which and the places whereon the wires may run"; also that, when the lines are erected, the selectmen "may direct any alteration in the location or erection of the poles * * * and in the height of the wires," after an opportunity to be heard given the company, all specifications and decisions made to be put on the town records. Section 26 provides that no enjoyment for the purposes specified in section 1, for any length of time, of the privilege of maintaining poles or wires in, upon, or over the land of other persons shall give a legal right to continue the enjoyment of such privilege, or raise any presumption of a grant thereof. There are also provisions in chapter 25, § 56, that the selectmen of towns may authorize citizens of the state to establish and maintain, in their town, poles, wires, and other apparatus for telegraphic communication in conformity with chapter 122. All these provisions were contained in the Public Statutes, superseded in 1902 by the Revised Laws, but in force from 1884 to 1902. The defendant contends that the plaintiff's right to construct or maintain its line in Essex depends upon these provisions, and that, unless it can show authority under them, it was and is without any right either to construct or to maintain its line. It contends that the acts of Congress referred to give the plaintiff no rights for those purposes in the public highways of the town through which the line passes.

[1] If these highways are "post roads," within the meaning of Rev. St. 5263, the plaintiff's right under that section to construct, maintain, and operate its line cannot be denied; the plaintiff having, as

above shown, met all the requirements of the federal statutes upon which this right is made to depend. Whether the public highways here in question, or any of them, were established as post roads by Rev. St. 3964 (U. S. Comp. St. 1901, p. 2707), it is unnecessary to consider, because, subsequently to the Revised Statutes, on March 1, 1884, Congress enacted that "all public roads and highways while kept up and maintained as such are hereby declared to be post routes" (23 Stat. 3). That "post routes," as there used, means anything different from "post roads," I am unable to believe, in view of the decisions which have treated this enactment as an exercise of the express power given Congress by the Constitution (article 1, § 8) to establish post offices and post roads. In Western, etc., Co. v. Penna. R. R. Co., 195 U. S. 540, 557, 25 Sup. Ct. 133, 49 L. Ed. 312, 1 Ann. Cas. 517, it is said that by the acts of Congress railroads within the United States were made "post routes or roads." See, also, Western, etc., Co. v. Richmond, 224 U. S. 160, 165, 166, 32 Sup. Ct. 449, 56 L. Ed. 710, where the act of March 1, 1884, is cited with Rev. St. § 3964, as having made all public highways post roads. A recent District Court decision (Mackay Co. v. Texarkana, 199 Fed. 347, 348) refers to these enactments as "the post roads act and amendments thereto."

[2] However it might be in the case of a telegraph company doing a purely private business, confined, for all purposes, within the limits of a state, there can be no doubt that in the case of a company like the plaintiff, engaged in transmitting interstate, international, and government messages, the legislation of Congress, so far as it has gone, is supreme, because of the powers possessed by Congress to regulate for the whole nation its commerce between the states and with foreign nations, and also the operation of the national postal service.

[3, 4] While the plaintiff owes its existence, its capacity to contract, its right to sue and be sued, and to exercise the business of telegraphy, to the laws of Massachusetts, under which it is organized, it holds its privilege to run its lines through the post roads referred to under the laws of Congress. Western, etc., Co. v. Massachusetts, 125 U. S. 530, 548, 8 Sup. Ct. 961, 31 L. Ed. 790. No state can exclude a telegraph company which has accepted the terms proposed by the national government for this national privilege, from prosecuting its business within the state. Western, etc., Co. v. Penna. R. R. Co., 195 U. S. 540, 562, 25 Sup. Ct. 133, 49 L. Ed. 312, 1 Ann. Cas. 517. It is true that the authority granted by Congress to such a company is merely permissive, and gives no right to use the soil, even of post roads, as against private owners, or as against the state or municipality where it owns the land. Western, etc., Co. v. Richmond, 224 U. S. 160, 169, 32 Sup. Ct. 449, 56 L. Ed. 710. No title is acquired by the mere exercise of the authority granted, nor is any right of eminent domain included. A company exercising the authority may be required to make reasonable compensation to the municipality entitled, for the occupation of its post roads. St. Louis v. Western, etc., Co., 148 U. S. 92, 13 Sup. Ct. 485, 37 L. Ed. 380. The company is subject to the taxing power of the state, and to the imposition by the state of police or other regulations not inconsistent with those established by Congress. The taxes imposed, however, must not be of a character, nor the methods

of collecting them such as to effect the exclusion of the company from the state or the stoppage of its business. The regulations must not be arbitrary, unreasonable, nor such as have the effect of excluding the company from the state or forbidding it to carry on its business therein. A state cannot so exclude or prohibit, either directly or indirectly. Western, etc., Co. v. Mass., 125 U. S. 530, 548, 8 Sup. Ct. 961, 31 L. Ed. 790; Postal, etc., Co. v. Adams, 155 U. S. 688, 696, 15 Sup. Ct. 268, 360, 39 L. Ed. 311. And if the state cannot so exclude or prohibit, no town within the state can do so under state authority. To concede such power to a town might be, in some cases, to enable one town to shut out all telegraph wires from territory beyond it and not accessible save through it.

[5] Ownership of the soil of these post roads is not claimed by the defendant town, which justifies its attempt to exclude the plaintiff, or stop the operation of its line within Essex, only by the claim that the company has never obtained a location for the line from the town authorities, according to the state statute. As has been stated, the specification in writing provided for by chapter 122, § 2, Rev. Laws, has been, though applied for, expressly withheld and refused since 1905; nor is the evidence sufficient to prove that such a specification was ever given the plaintiff by the selectmen. None is produced by the plaintiff, nor is any record of one found in the town records. But the laws of Massachusetts nowhere penalize or make illegal the construction of a telegraph line like this without the permit or specification. See Suburban, etc., Co. v. Boston, 153 Mass. 200, 26 N. E. 447, 10 L. R. A. 497. And no failure on the plaintiff's part to do anything which the town has the right to require under the statutes, state or federal, or can otherwise reasonably require as a condition of giving the specification, appears. The plaintiff has been, at least since 1905, constantly in the attitude of requesting the town to give the specification.

Under those circumstances, I am unable to hold that the plaintiff is not lawfully occupying its location within Essex, or is not lawfully operating its line within that town. In view of the federal statutes and their scope, I can find nothing in the Massachusetts legislation referred to, nor in the facts as shown, which can have the effect of abridging or restricting the plaintiff's rights to maintain and operate the line referred to.

The cross-bill must therefore be dismissed, and a permanent injunction will issue as prayed for in the bill.