UNITED STATES of America and United States Postal Service, Plaintiffs,

v.

CITY OF ST. LOUIS et al., Defendants.

No. 77–1012C(1).

United States District Court, E. D. Missouri, E. D.

April 25, 1978.

Wesley D. Wedemeyer, Asst. U.S. Atty., St. Louis, Mo., David J. Anderson, Larry Moore, Attys., Dept. of Justice, Washington, D.C., for plaintiffs.

Thomas J. Ray, Asst. City Counselor, St. Louis, Mo., John H. Goffstein, Bartley, Goffstein, Bollato & Lange, Clayton, Mo., Peter J. Carre, Mozart G. Ratner, P.C., Washington, D.C., for defendants.

## MEMORANDUM

MEREDITH, Chief Judge.

This matter is before the Court on the motion of plaintiffs, United States of America and the United States Postal Service (hereinafter "Postal Service"), for partial summary judgment and on the motions of defendants the City of St. Louis and the National Association of Letter Carriers Branch No. 343 (hereinafter "Union") to dismiss or alternatively to stay proceedings and to dismiss or alternatively for summary judgment. For the reasons stated below, the motion of plaintiffs for partial summary judgment will be denied. The motion of defendants for summary judgment on Count I will be granted. Count II will be dismissed for lack of jurisdiction. Defendants' motion for a stay of proceeding will be denied as moot.

This case is the product of a continuing dispute between the Postal Service management and labor representatives of the letter carriers over the routes of mailmen. The continuing question is: whether postmen must use sidewalks, or whether they may, on their own initiative, or must, on the command of their superiors, take off across country, using private lawns as thoroughfares. The Postal Service wants the routes measured along shortcuts, across lawns, so that one postman can cover more houses in less time. The Union wants the routes measured along the sidewalks, which results in one postman covering fewer houses in more time, and consequently in the employment of more postmen.

The Postal Service is an independent establishment of the Executive Branch of the United States Government, established in

1971 by 39 U.S.C. § 201, to provide postal service, and empowered to sue in its official name by 39 U.S.C. § 401(1).

The Union is a labor organization, representing seventeen hundred letter carriers employed by the Postal Service in the St. Louis metropolitan area, and affiliated with the National Association of Letter Carriers, AFL–CIO.

The City of St. Louis (hereinafter "City") is a municipal corporation established and existing under the laws of the State of Missouri within the Eastern District of Missouri.

The United States and the Postal Service brought this action on September 20, 1977, against the City and against the Union, and certain Union officers. In Count I, plaintiffs challenge the constitutionality of City Ordinance No. 57335, which declares lawn crossing, even by mailmen, a trespass. In Count II, plaintiffs allege that Union defendants violated their collective bargaining agreement with the Postal Service. Jurisdiction is alleged under 28 U.S.C. § 1345 and 39 U.S.C. §§ 409(a) and 1208.

Regional Instructions No. 331–1, City Delivery Service, Section XIII E, January 15, 1968, provide that a:

"Carrier may cross lawns while making deliveries if patrons do not object and there are no particular hazards to the carrier."

This language is incorporated into the applicable collective bargaining agreement:

"Letter carriers may cross lawns while making deliveries if customers do not object and there are no particular hazards to the carrier." (Agreement between the United States Postal Service and Four National Postal Labor Unions, September 4, 1975, Article XLI, sec. 3N.)

An arbitration award under that agreement purports to confirm the management right to require a carrier to cross lawns as agreed. (United States Postal Service and National Association of Letter Carriers. Grievance No. NC–C–178, December 23, 1976.)

In an unsigned document, dated January 7, 1977, and styled "Memorandum for the Record", Edward M. Hubert, S.C. Director of Employee & Labor Relations, reported his version of a meeting held on January 5, 1977, in the Postmaster's office between the Postal Service and Union officials:

"Both parties agreed that (a) the carrier makes the initial decision whether or not to cross a lawn or take available short cut, (b) that management has the authority to direct a carrier to take an available short cut which may be crossing a lawn unless there is a documented customer objection on file on form 3982, or a safety hazard. Further the union will advise their memebers [sic] of this authority."

The Union declares that the language of the Memorandum, which they neither signed nor acquiesced in, reads:

". . . (a) the carrier makes the final decision whether or not to cross a lawn . . ."

though how that language can be reconciled with section (b) is not explained.

On March 22, 1977, Municipal Ordinance No. 57335, a proviso to the general trespass ordinance, section 795.010 of the Municipal Code of the City of St. Louis, was signed into law. Section 795.010 provides in part:

"No person, without lawful authority, or without the express or implied consent of the owner or his agent, shall enter . . . on any inclosed or improved real estate, . . . in the City; or, being upon the land of another shall fail, or refuse to leave same when requested so to do by the person lawfully in possession thereof, his agent or representative . . ."

Ordinance No. 57335 amends section 795.010 as follows:

"Provided further, all delivery personnel, including letter carriers, whether employed by a private firm or government agency or government supported corporation, shall use sidewalks and accepted and approved walkways and shall refrain from traversing lawns or other private property not normally used as a walkway by the general public in order to effect delivery."

On May 24, 1977, Edward Marlotte, a uniformed Postal Service letter carrier, was served by Robert E. Steele, a St. Louis City Policeman, with citation No. 77–75054, and charged with violating the Ordinance in the course of his duty. Marlotte's case was removed from the circuit court to the federal district court, and later was remanded to the circuit court.

On June 1, 1977, the Union initiated a grievance against the Postal Service about lawn crossings, which as Case No. NC–C–7851 is still in arbitration before the parties' National Arbitration Panel.

On June 15, 1977, the Postal Service wrote the Mayor of St. Louis, demanding that the City "cease any and all efforts to regulate the conduct of Federal postal employees on official business."

On July 26, 1977, the Assistant Attorney General for the Civil Division of the Department of Justice wrote the Mayor of St. Louis, demanding that the City "take such steps as are necessary to render the subject ordinance null and void and of no further force and effect in relation to United States Postal Service's letter carriers."

On September 20, 1977, plaintiffs United States and the Postal Service brought this action, seeking a declaration that Ordinance No. 57335 is unconstitutional and void, and a permanent injunction enjoining the defendant City and its agents from interfering with the Postal Service letter carriers while they are about their official duties, as well as various injunctions and declarations about the conduct of the Union and its officers.

On December 21, 1977, this action was transferred from Court 3 to Court 1.

Now pending are the motions by Union defendant to dismiss or alternatively for a stay of proceedings pending arbitration or for summary judgment, filed November 14, 1977, and the motion of plaintiffs for summary judgment on Count I.

Plaintiffs' legal theory in Count I is that Ordinance No. 57335 is unconstitutional because it is an attempt by the City to regulate in an area preempted by federal regulation.

Ordinance No. 57335 is based on the common law of trespass. The ordinance declares that a mailman, like any other invitee, is licensed to use those paths which the householder provides for access, and that when the mailman cuts across the lawn, rather than using the sidewalk provided, he becomes a trespasser. The Postal Service chooses to argue that it has, by internal policy statements, memoranda, and collective bargaining agreements, obtained for its agents the right to trespass. As this contended right is in derogation of the common law, it must be carefully examined.

Plaintiffs argue that the regional instructions and collective bargaining agreement announced as applicable to St. Louis in the January 5, 1977, meeting of which plaintiffs made a unilateral, informal memorandum, the "Memorandum for the Record", all quoted above, are legitimate Postal Service regulations permitting lawn crossing. Therefore, plaintiffs argue, the City's trespass ordinance is void as applied to mailmen, as it is preempted by the federal regulation.

■ Congress may, pursuant to its power to regulate commerce, U.S.Const., Art. I, § 8, prohibit state regulation in the same area. But, traditionally, "the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947). If Congress clearly intended itself as the sole regulator, state laws are preempted by valid Congressional regulation, even if the state laws are only supplementary. *City of Burbank v. Lockheed Air Terminal, Inc.*, 411 U.S. 624, 633, 93 S.Ct. 1854, 36 L.Ed.2d 547 (1973). And even where Congressional regulation is not exclusive, it displaces any state laws with which the federal regulations conflict. U.S. Const., Art. VI. To determine whether there is a conflict, the Court must decide whether the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Con-

gress." *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941); see *De Canas v. Bica*, 424 U.S. 351, 363, 96 S.Ct. 933, 47 L.Ed.2d 43 (1976).

In the case of *Grover City v. Postal Service*, 391 F.Supp. 982 (C.D.Cal.1975), a municipality sued to enjoin the Postal Service to give patrons delivery at their door, after a municipal ordinance had ordered mailboxes moved back so that curbside delivery was not possible. The injunction was denied, with the accompanying dicta:

> "If there were any conflicts between the City's ordinance and postal regulations, the regulations necessarily would pre-empt the ordinance under the Supremacy Clause of the Constitution, Article VI, clause 2, because federal regulations authorized under federal law have the same pre-emptive effect on state or local laws as the federal laws themselves." *Grover City v. Postal Services*, supra, at 986.

The federal regulations must be themselves constitutionally valid, and they must be constitutionally enforced.

> "The difficulty attending the subject arises, not from the want of power in Congress to prescribe regulations . . but from the necessity of enforcing them consistently with rights reserved to the people, of far greater importance than the transportation of the mail." *Ex Parte Jackson*, 96 U.S. 727, 732, 24 L.Ed. 877 (1878).

The initial question is whether the federal regulation itself is authorized under federal law. In the present case, we are forced to conclude that it is not. Article I, Section 8, clause 7, of the Constitution of the United States, empowers Congress "[t]o establish post-offices and post-roads." Congress has delegated its power to the Post Office Department. On September 2, 1960, the general and permanent laws relating to the Postal Service were enacted as Title 39, U.S.C., section 1, et seq. The Postal Service takes from Congress only those powers which the Constitution gives to Congress. And there is no indication that it was within the contemplation of the founding fa-

thers, who were wary of government incursions into private rights, that anything but commonly travelled pathways should become post roads. 39 U.S.C. § 6105 defines post roads:

> "The following are post roads—
>
> "(1) the waters of the United States, during the time the mail is carried thereon;
>
> "(2) railroads or parts of railroads and air routes in operation;
>
> "(3) canals, during the time the mail is carried thereon;
>
> "(4) public roads, highways, and toll roads during the time the mail is carried thereon; and
>
> "(5) letter-carrier routes established for the collection and delivery of mail."

This language was taken from earlier statutes.

> "By the act of March 3, 1851, § 10 (9 St. at Large, 591,) the postmaster general was empowered to establish post-routes within cities and towns for the receiving, conveying, and delivering of letters by carriers to be appointed by him." *Blackham v. Gresham*, 16 F. 609, 610 (2nd Cir. 1883).

> "[U]nder the postal laws 'post-routes' and 'post-roads' had distinct meanings; post-routes being the appointed course or prescribed line of mail transportation, and post-roads the highways or public passages employed for that purpose." Ibid. citing *United States v. Kochersperger*, 9 Amer.Law Reg. 145 (1860)

See also *New England Telegraph Co. of Massachusetts v. Town of Essex*, 206 F. 926, 930 (D.Mass.1913); and *Western Union Tel. Co. v. Mayor of the City of New York et al.*, 38 F. 552 (2d Cir. 1889).

> "The power given by the constitution to establish post roads has always been construed to mean, and as I think rightly, such roads as were regularly laid out by authority of the states, or by counties under the laws of the states. The government of the United States cannot construct a post road within a state of this Union without its consent; but con-

gress may declare, that is, establish, such a road already opened and made a public highway by the direct or indirect authority of the state." *P.&.A.R.Co. v. Franklin Canal Co.*, Fed. Case No. 2890 (5 Fed.Cas. at 1047) (W.D.Pa.1853).

And the same is true of post routes along city streets.

"By sec. 3964, Rev.Stat.U.S.: 'The following are established post roads: . . . All letter-carrier routes established in any city or town for the collection and delivery of mail matters.' And the streets of St. Louis are such 'letter-carrier routes.' So also, by the act of March 1, 1884 (23 Stat. 3): 'All public roads and highways, while kept up and maintained as such, are hereby declared to be post routes.'" *St. Louis v. Western Union Telegraph Co.*, 148 U.S. 92, 100, 13 S.Ct. 485, 488, 37 L.Ed. 380 (1893).

It is the public character of these routes that is primary, they are public routes first, and post roads afterwards. It is the City of St. Louis which is charged with determining whether the ways in question are public routes. The Supreme Court has recognized that "The City of St. Louis occupies a unique position. It does not, like most cities, derive its powers by grant from the legislature, but it framed its own charter under express authority from the people of the State, given in the constitution." *St. Louis v. Western Union Telegraph Co.*, 149 U.S. 465, 467, 13 S.Ct. 990, 991, 37 L.Ed. 810 (1893). The City has the power to declare and care for public ways in the City. If only a public way can be declared a post road, and only the City can declare a public way, it could be argued that Ordinance No. 57335, expressing as it does the clear intent of the City that people's front lawns are not public pathways, deprives the Postal Service of the power to make front lawns a postal route, and requires that postmen, like everyone else, use sidewalks, which are the pathways provided by the householder for public use.

But, this Court's decision rests on an even firmer basis: the Fifth Amendment.

"No one would suppose that a franchise from the Federal government to a corporation, state or national, to construct interstate roads or lines of travel, transportation, or communication, would authorize it to enter upon the private property of an individual, and appropriate it without compensation. No matter how broad and comprehensive might be the terms in which the franchise was granted, it would be confessedly subordinate to the right of the individual not to be deprived of his property without just compensation." *St. Louis v. Western Union Telegraph Co.*, 148 U.S. 92, 100–101, 13 S.Ct. 485, 488, 37 L.Ed. 380 (1893).

See *New England Telegraph Co. of Massachusetts v. Town of Essex*, supra, 931. The reason the federal government could not give a franchise "to enter upon the private property of an individual, and appropriate it without compensation," is that the federal government itself does not have that power.

■ Although the power vested in Congress includes: "designation of the routes over which the mail shall be carried . . . and all measures necessary to insure the safe and speedy transit and the prompt delivery of its contents, *Ex parte Jackson*, 96 U.S. 727, 732, 24 L.Ed. 877 (1878), this grant must be "construed in the light of definite prohibitions in the Constitution." *In re American States Public Service Co.*, 12 F.Supp. 667, 705 (D.C.Md.1935), modified in *Burco, Inc., v. Whitworth*, 81 F.2d 721 (4th Cir. 1936). The power of Congress, and hence of the Postal Service, to regulate the postal system "is not absolute and unfettered", but is limited by other provisions of the Constitution. *Heilberg v. Fixa*, 236 F.Supp. 405, 408 (N.D.Cal.1964), affirmed 381 U.S. 301, 85 S.Ct. 1493, 14 L.Ed.2d 398 (1965), "and is subject to the Bill of Rights," *Securities and Exchange Commission v. Time Trust, Inc.*, 28 F.Supp. 34, 40 (D.C.Cal. 1939), and the limits of the Fifth Amendment, *In re American States Public Service Co.*, supra.

The Fifth Amendment to the Constitution of the United States declares that

"No person shall . . . be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use without just compensation."

"Confiscation may result from a taking of the use of property without compensation quite as well as from the taking of the title. . . . [A] regulation which is so arbitrary and unreasonable as to become an infringement upon the right of ownership constitutes a violation of the due process of law clause of the Fifth Amendment." *Chicago R. I. & P. Ry. v. United States*, 284 U.S. 80, 96–97, 52 S.Ct. 87, 92, 76 L.Ed. 177 (1931).

■ For a postman to beat a daily pathway across a householder's lawn is a violation of that householder's Fifth Amendment rights. Nor is allowing the householder the "right" to object a sufficient protection of his Fifth Amendment rights. The government cannot choose to act on the presumption that householders will accept official short-cuts. Citizens have a right to have their mail delivered without being forced to take the offensive to defend their property. The Postal Service cannot require them to assume that burden and fill out an official complaint card. See *Lamont v. Postmaster General*, 381 U.S. 301, 305, 85 S.Ct. 1493, 14 L.Ed.2d 398 (1965). "[C]ongress may not exercise its control over the mails to enforce a requirement which lies outside its constitutional province . . ." *Electric Bond Co. v. Comm'n*, 303 U.S. 419, 442, 58 S.Ct. 678, 687, 82 L.Ed. 936 (1938). Nor is the additional cost to the Postal Service of using sidewalks a compelling reason to decide differently.

If the Postal Service feels that it is essential to lay out routes along short cuts across particular pieces of private property, it may take the proper steps to obtain a grant of the right to traverse that property. There are several possible courses of action open to the Postal Service. Section 401(5) of Article 39 gives the Postal Service power

"to acquire, in any lawful manner, such personal or real property, or any interest therein, as it deems necessary or convenient in the transaction of its business; to hold, maintain, sell, lease, or otherwise dispose of such property or any interest therein; and to provide services in connection therewith and charges therefor;"

Section 401(7) empowers it

"to accept gifts or donations of services or property, real or personal, as it deems necessary or convenient in the transaction of its business;"

Nothing prevents a householder from making a valid grant to the post office of the right to traverse his lawn, unless it be the fear that this may, as a grant to an arm of the government, create a general public right-of-way across the private property. Section 401(9) of 39 U.S.C. empowers the Postal Service

"to exercise, in the name of the United States, the right of eminent domain for the furtherance of its official purposes;"

The United States government may condemn land under 40 U.S.C. §§ 258a–258e, and the requirements of 40 U.S.C. §§ 258a–258e are specifically applied to the Postal Service by 39 U.S.C. § 410(b)(4)(A). These statutes outline the proper procedures for the Postal Service to take in order to obtain the right to use short-cuts across specific tracts of private land.

In their motion for summary judgment, plaintiffs stated that there was no genuine issue of material fact as to Count I. That being the case, and defendants being entitled to summary judgment as a matter of law, summary judgment will be granted to defendants, City of St. Louis and the Union on Count I, and Count I will be dismissed with prejudice.

■ The matters raised in Count II are closely tied to matters pending in arbitration as Arb. Case No. NC–C–7851. Federal policy favors arbitration as a means of solving labor disputes, *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957); *United Steelworkers of America v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrior and Gulf Navigation Co.*, 363 U.S. 574, 80

S.Ct. 1347, 4 L.Ed.2d 1409 (1960); and *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). The grievance-arbitration procedure has not been exhausted here, as it must be, and, therefore, this Court will not interfere. *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965).

Count II, which is premised on the constitutionality of the Postal Service regulations and collective bargaining agreements involved, and, in addition, is closely tied to matters under arbitration, will be dismissed without prejudice as premature, for lack of jurisdiction. F.R.C.P. 12(b).

Defendants' motion for a stay of proceedings will be denied as moot.