# EX PARTE JACKSON.

1. The power vested in Congress to establish "post-offices and post-roads" embraces the regulation of the entire postal system of the country. Under it, Congress may designate what shall be carried in the mail, and what excluded.

2. In the enforcement of regulations excluding matter from the mail, a distinction is to be made between what is intended to be kept free from inspection, such as letters, and sealed packages subject to letter postage, and what is open to inspection, such as newspapers, magazines, pamphlets, and other printed matter, purposely left in a condition to be examined.

3. Letters, and sealed packages subject to letter postage, in the mail can be opened and examined only under like warrant, issued upon similar oath or affirmation, particularly describing the thing to be seized, as is required when papers are subjected to search in one's own household. The constitutional guaranty of the right of the people to be secure in their papers against unreasonable searches and seizures extends to their papers, thus closed against inspection, wherever they may be.

4. Regulations against transporting in the mail printed matter, which is open to examination, cannot be enforced so as to interfere in any manner with the freedom of the press. Liberty of circulating is essential to that freedom. When therefore, printed matter is excluded from the mail, its transportation in any other way as merchandise cannot be forbidden by Congress.

5. Regulations excluding matter from the mail may b enforced through the courts, upon competent evidence of their viola ion obtained in other ways than by the unlawful inspection of letters and sealed packages; and with respect to objectionable printed matter, open to examination, they may in some cases also be enforced by the direct action of the officers of the postal service upon their own inspection, as where the object is exposed, and shows unmistakably that it is prohibited, as in the case of an obscene picture or print.

6. When a party is convicted of an offence, and sentenced to pay a fine, it is within the discretion of the court to order his imprisonment until the fine shall be paid.

PETITION for writs of *habeas-corpus* and *certiorari*.

Section 3894 of the Revised Statutes provides that "No letter or circular concerning illegal lotteries, so-called gift-concerts, or other similar enterprises offering prizes, or concerning schemes devised and intended to deceive and defraud the public, for the purpose of obtaining money under false pretences, shall be carried in the mail. Any person who shall knowingly deposit or send any thing to be conveyed by mail, in violation of this section, shall be punishable by a fine of not more than $500, nor less than $100, with costs of prosecution." By an act approved July 12, 1876 (19 Stat. 90), the word "illegal" was stricken out of the section. Under the law as thus amended, the petitioner was indicted, in the Circuit Court of the United States for the Southern District of New York, for knowingly and unlawfully depositing, on the 23d of February, 1877, at that district, in the mail of the United States, to be conveyed in it, a circular concerning a lottery offering prizes, enclosed in an envelope addressed to one J. Ketcham, at Gloversville, New York. The indictment sets forth the offence in separate counts, so as to cover every form in which it could be stated under the act. Upon being arraigned, the petitioner stood mute, refusing to plead; and thereupon a plea of not guilty was entered in his behalf by order of the court. Rev. Stat., sect. 1032. He was subsequently tried, convicted, and sentenced to pay a fine of $100, with the costs of the prosecution, and to be committed to the county jail until the fine and costs were paid. Upon his commitment, which followed, he presented to this court a petition alleging that he was imprisoned and restrained of his liberty by the marshal of the Southern District of New York, under the conviction; that such conviction was illegal, and that the illegality consisted in this: that the court had no jurisdiction to punish him for the acts charged in the indictment; that the act under which the indictment was drawn was unconstitutional and void; and that the court exceeded its jurisdiction in committing him until the fine was paid. He therefore prayed for a writ of *habeas corpus* to be directed to the marshal to bring him before the court, and a writ of *certiorari* to be directed to the clerk of the Circuit Court to send up the record of his conviction, that this court might

inquire into the cause and legality of his imprisonment. Accompanying the petition, as exhibits, were copies of the indictment and of the record of conviction. The court, instead of ordering that the writs issue at once, entered a rule, the counsel of the petitioner consenting thereto, that cause be shown, on a day designated, why the writs should not issue as prayed; and that a copy of the rule be served on the Attorney-General of the United States, the marshal of the Southern District of New York, and the clerk of the Circuit Court. The Attorney-General, for himself and others, answered the rule, by averring that the petition and exhibits do not make out a case in which this court has jurisdiction to order the writs to issue, and that the petitioner is in lawful custody by virtue of the proceedings and sentence mentioned in the exhibits, and the commitment issued thereon.

*Mr. A. J. Dittenhoefer* and *Mr. Louis F. Post* for the petitioner.

1. From the power to establish post-offices and post-roads, that of receiving, carrying, and delivering the mail is implied; and from these are derived other incidental powers, one of them being the right to protect the mail by appropriate legislation. *McCullough* v. *Maryland*, 4 Wheat. 316; *Sturtevant* v. *City of Alton*, 3 McLean, 393.

2. As the power of Congress is exclusive, its legislation establishing a post-office or post-road, or regulating the receipt, protection, carriage, or delivery of the mail, is therefore supreme. Congress has, in the exercise of the power, declared (Rev. Stat., sect. 3982) that " no person shall establish any private express for the conveyance of letters or packets, or in any manner cause or provide for the conveyance of the same, by regular trips or at stated periods, over any post-route which is or may be established by law, or from any city, town, or place, to any other city, town, or place, between which the mail is regularly carried."

3. The power so vested in Congress imposed upon that body the duty to furnish adequate facilities for the secure transportation and delivery of all letters and packets which were considered legitimate mail matter at the time of the adoption of the Constitution. To provide the requisite funds for the performance of this duty, Congress has imposed reasonable rates

of postage; and, to protect the contents of the mail, has prohibited the putting in the mail-bags of any poisonous or explosive article, which may injure them, or the persons connected with the mail service; and it has also limited the bulk and weight of mailable packets. These are matters of appropriate regulation. Never, however, until 1836, was any attempt made to exclude established mail matter from the mails. The President had previously recommended to Congress the passage of a law prohibiting the conveyance by mail of publications inciting persons held to service in the Southern States to revolt against their masters. Pursuant to the recommendation, a bill was introduced in the Senate providing that it should not be lawful for any deputy-postmaster knowingly to receive and put into the mail any pamphlet, newspaper, handbill, or other printed, written, or pictorial representation, touching the subject of slavery, directed to any person or post-office where, by the laws thereof, their circulation was prohibited. Cong. Globe, 1836, p. 150. The measure was signally defeated. The views of the most eminent statesmen of that day, as they appear in the published debates, against its passage upon constitutional grounds, are applicable to the statute under which the petitioner was convicted, and conclusively demonstrate its unconstitutionality.

4. In the year 1868, Congress, in the exercise of an assumed power, declared that it should not be lawful to deposit in a post-office, to be sent by mail, any letters or circulars concerning lotteries, so-called gift-concerts, or other similar enterprises (15 Stat. 196), although all letters whatsoever, without regard to the character of the communication contained in them, had been previously considered to be legitimate mail matter. That act, initiating this species of legislation, is of a like character with the one governing this case, and both are unconstitutional. If Congress can exclude from the mail a letter concerning lotteries which have been authorized by State legislation, and refuse to carry it by reason of their asserted injurious tendency, it may refuse to carry any other business letter; and as the conveyance of letters otherwise than by the mail of the United States, at stated periods, over any post-road, has, as above shown, been prohibited by Congress, that body may cut off all

means of epistolary communication upon any subject which is objectionable to a majority of its members. So long as the duty of carrying the mails is imposed upon Congress, a letter or a packet which was confessedly mailable matter at the time of the adoption of the Constitution cannot be excluded from them, provided the postage be paid and other regulations be observed. Whatever else has been declared to be mailable matter, — as postal cards, postal money-orders, merchandise, &c., all of which were unknown to the postal system when the convention concluded its labors in 1787, — may, in the discretion of Congress, be abolished.

*Mr. Assistant-Attorney-General Smith, contra.*

1. Congress has the power "to establish post-offices and post-roads," and to make all laws necessary and proper for carrying into execution that power.

The framers of the Constitution meant to create an establishment as an entirety; not merely to designate the places at which mails should be taken up and delivered, and the routes by which they should be transported from point to point. Full, sovereign control over the whole subject was given, to be exercised by any appropriate means. *Kohl et al.* v. *United States*, 91 U. S. 367; *Dickey* v. *Maysville & Lexington Turnpike Road Co.*, 7 Dana (Ky.), 113; *Sturtevant* v. *City of Alton*, 3 Mc-Lean, 393; 2 Story, Const., sects. 1125–1150; Rawle, Const., c. 9, pp. 103, 104.

2. Having exclusive power over the subject, Congress can prescribe the matter which shall receive the benefits of this establishment; and he who complains that he cannot use it to transmit obscene or improper communications, no more maintains a constitutional right than does the debtor who cannot avail himself of the Bankrupt Act because he owes but $100, or because (under the first law on this subject) he is not a trader. It is a question of administration merely. If the public interests require the exclusion of articles morally contaminating, as well as of poisons, acids, or explosives, to prohibit their deposit in the post-office is as "essential to the beneficial exercise of the power" granted by the Constitution, though "not indispensably necessary to its existence," as any of those mentioned in *McCulloch* v. *The State of Maryland*, 4 Wheat. 316.

The remedy is in the hands of the people, if Congress so legislates as to deprive them of the full and just enjoyment of postal privileges.

Any State choosing to sanction a business which Congress thinks ought not to have the use of the mails to facilitate its transactions, can, if she please, provide means of communication for matter so excluded from the mails.   2 Story, Const., sect. 1150 ; 1 Tucker's Bl. Com., App. 265.

But, if there is a right to exclude any matter from the mail, the extent of its exercise is one of legislative discretion.

MR. JUSTICE FIELD, after stating the case, delivered the opinion of the court.

The power vested in Congress "to establish post-offices and post-roads" has been practically construed, since the foundation of the government, to authorize not merely the designation of the routes over which the mail shall be carried, and the offices where letters and other documents shall be received to be distributed or forwarded, but the carriage of the mail, and all measures necessary to secure its safe and speedy transit, and the prompt delivery of its contents.   The validity of legislation prescribing what should be carried, and its weight and form, and the charges to which it should be subjected, has never been questioned.   What should be mailable has varied at different times, changing with the facility of transportation over the post-roads.   At one time, only letters, newspapers, magazines, pamphlets, and other printed matter, not exceeding eight ounces in weight, were carried ; afterwards books were added to the list.; and now small packages of merchandise, not exceeding a prescribed weight, as well as books and printed matter of all kinds, are transported in the mail.   The power possessed by Congress embraces the regulation of the entire postal system of the country.   The right to designate what shall be carried necessarily involves the right to determine what shall be excluded. The difficulty attending the subject arises, not from the want of power in Congress to prescribe regulations as to what shall constitute mail matter, but from the necessity of enforcing them consistently with rights reserved to the people, of far greater importance than the transportation of the mail.   In their en-

forcement, a distinction is to be made between different kinds of mail matter,—between what is intended to be kept free from inspection, such as letters, and sealed packages subject to letter postage; and what is open to inspection, such as newspapers, magazines, pamphlets, and other printed matter, purposely left in a condition to be examined. Letters and sealed packages of this kind in the mail are as fully guarded from examination and inspection, except as to their outward form and weight, as. if they were retained by the parties forwarding them in their own domiciles. The constitutional guaranty of the right of the people to be secure in their papers against unreasonable searches and seizures extends to their papers, thus closed against inspection, wherever they may be. Whilst in the mail, they can only be opened and examined under like warrant, issued upon similar oath or affirmation, particularly describing the thing to be seized, as is required when papers are subjected to search in one's own household. No law of Congress can place in the hands of officials connected with the postal service any authority to invade the secrecy of letters and such sealed packages in the mail; and all regulations adopted as to mail matter of this kind must be in subordination to the great principle embodied in the fourth amendment of the Constitution.

Nor can any regulations be enforced against the transportation of printed matter in the mail, which is open to examination, so as to interfere in any manner with the freedom of the press. Liberty of circulating is as essential to that freedom as liberty of publishing; indeed, without the circulation, the publication would be of little value. If, therefore, printed matter be excluded from the mails, its transportation in any other way cannot be forbidden by Congress.

In 1836, the question as to the power of Congress to exclude publications from the mail was discussed in the Senate; and the prevailing opinion of its members, as expressed in debate, was against the existence of the power. President Jackson, in his annual message of the previous year, had referred to the attempted circulation through the mail of inflammatory appeals, addressed to the passions of the slaves, in prints, and in various publications, tending to stimulate them to insurrection; and suggested to Congress the propriety of passing a law prohibiting,

under severe penalties, such circulation of "incendiary publica
tions" in the Southern States. In the Senate, that portion of
the message was referred to a select committee, of which Mr.
Calhoun was chairman; and he made an elaborate report on
the subject, in which he contended that—it belonged to the
States, and not to Congress, to determine what is and what is
not calculated to disturb their security, and that to hold other-
wise would be fatal to the States; for if Congress might deter-
mine what papers were incendiary, and as such prohibit their
circulation through the mail, it might also determine what were
not incendiary, and enforce their circulation. Whilst, there-
fore, condemning in the strongest terms the circulation of the
publications, he insisted that Congress had not the power to
pass a law prohibiting their transmission through the mail, on
the ground that it would abridge the liberty of the press. "To
understand," he said, "more fully the extent of the control
which the right of prohibiting circulation through the mail
would give to the government over the press, it must be borne
in mind that the power of Congress over the post-office and the
mail is an exclusive power. It must also be remembered that
Congress, in the exercise of this power, may declare any road or
navigable water to be a post-road; and that, by the act of 1825,
it is provided 'that no stage, or other vehicle which regularly
performs trips on a post-road, or on a road parallel to it, shall
carry letters.' The same provision extends to packets, boats,
or other vessels on navigable waters. Like provision may be
extended to newspapers and pamphlets, which, if it be admitted
that Congress has the right to discriminate in reference to their
character, what papers shall or what shall not be transmitted
by the mail, would subject the freedom of the press, on all sub-
jects, political, moral, and religious, completely to its will and
pleasure. It would in fact, in some respects, more effectually
control the freedom of the press than any sedition law, however
severe its penalties." Mr. Calhoun, at the same time, contended
that when a State had pronounced certain publications to be
dangerous to its peace, and prohibited their circulation, it was
the duty of Congress to respect its laws and co-operate in their
enforcement; and whilst, therefore, Congress could not prohibit
the transmission of the incendiary documents through the mails,

it could prevent their delivery by the postmasters in the States where their circulation was forbidden. In the discussion upon the bill reported by him, similar views against the power of Congress were expressed by other senators, who did not concur in the opinion that the delivery of papers could be prevented when their transmission was permitted.

Great reliance is placed by the petitioner upon these views, coming, as they did in many instances, from men alike distinguished as jurists and statesmen. But it is evident that they were founded upon the assumption that it was competent for Congress to prohibit the transportation of newspapers and pamphlets over postal-routes in any other way than by mail; and of course it would follow, that if, with such a prohibition, the transportation in the mail could also be forbidden, the circulation of the documents would be destroyed, and a fatal blow given to the freedom of the press. But we do not think that Congress possesses the power to prevent the transportation in other ways, as merchandise, of matter which it excludes from the mails. To give efficiency to its regulations and prevent rival postal systems, it may perhaps prohibit the carriage by others for hire, over postal routes, of articles which legitimately constitute mail matter, in the sense in which those terms were used when the Constitution was adopted, consisting of letters, and of newspapers and pamphlets, when not sent as merchandise; but further than this its power of prohibition cannot extend.

Whilst regulations excluding matter from the mail cannot be enforced in a way which would require or permit an examination into letters, or sealed packages subject to letter postage, without warrant, issued upon oath or affirmation, in the search for prohibited matter, they may be enforced upon competent evidence of their violation obtained in other ways; as from the parties receiving the letters or packages, or from agents depositing them in the post-office, or others cognizant of the facts. And as to objectionable printed matter, which is open to examination, the regulations may be enforced in a similar way, by the imposition of penalties for their violation through the courts, and, in some cases, by the direct action of the officers of the postal service. In many instances, those officers can act

upon their own inspection, and, from the nature of the case, must act without other proof; as where the postage is not prepaid, or where there is an excess of weight over the amount prescribed, or where the object is exposed, and shows unmistakably that it is prohibited, as in the case of an obscene picture or print. In such cases, no difficulty arises, and no principle is violated, in excluding the prohibited articles or refusing to forward them. The evidence respecting them is seen by every one, and is in its nature conclusive.

In excluding various articles from the mail, the object of Congress has not been to interfere with the freedom of the press, or with any other rights of the people; but to refuse its facilities for the distribution of matter deemed injurious to the public morals. Thus, by the act of March 3, 1873, Congress declared "that no obscene, lewd, or lascivious book, pamphlet, picture, paper, print, or other publication of an indecent character, or any article or thing designed or intended for the prevention of conception or procuring of abortion, nor any article or thing intended or adapted for any indecent or immoral use or nature, nor any written or printed card, circular, book, pamphlet, advertisement, or notice of any kind, giving information, directly or indirectly, where, or how, or of whom, or by what means, either of the things before mentioned may be obtained or made, nor any letter upon the envelope of which, or postal-card upon which indecent or scurrilous epithets may be written or printed, shall be carried in the mail; and any person who shall knowingly deposit, or cause to be deposited, for mailing or delivery, any of the hereinbefore mentioned articles or things, . . . shall be deemed guilty of a misdemeanor, and, on conviction thereof, shall, for every offence, be fined not less than $100, nor more than $5,000, or imprisonment at hard labor not less than one year nor more than ten years, or both, in the discretion of the judge."

All that Congress meant by this act was, that the mail should not be used to transport such corrupting publications and articles, and that any one who attempted to use it for that purpose should be punished. The same inhibition has been extended to circulars concerning lotteries, — institutions which are supposed to have a demoralizing influence upon the people. There is no

question before us as to the evidence upon which the conviction of the petitioner was had; nor does it appear whether the envelope in which the prohibited circular was deposited in the mail was sealed or left open for examination. The only question for our determination relates to the constitutionality of the act; and of that we have no doubt.

The commitment of the petitioner to the county jail, until his fine was paid, was within the discretion of the court under the statute.

As there is an exemplified copy of the record of the petitioner's indictment and conviction accompanying the petition, the merits of his case have been considered at his request upon this application; and, as we are of opinion that his imprisonment is legal, no object would be subserved by issuing the writs; they are therefore

*Denied.*