143 U.S. 110
 12 S.Ct. 374
 36 L.Ed. 93
 Ex parte RAPIER.
Ex parte DUPRE, (two cases.)
 February 1, 1892.
 
 [Statement of Case from pages 110-112 intentionally omitted]
 Hannis Taylor, for petitioner Rapier.
 Jas. C. Carter and Thos J. Semmes, for petitioner Dupre.
 Atty. Gen. Miller and Asst. Atty. Gen. Maury, for respondents.
 [Argument of Counsel from pages 113-132 intentionally omitted]
 Mr. Chief Justice FULLER delivered the opinion of the court:
 
 
 1
 We are constrained by the circumstances in which we find ourselves placed by the illness and death of Mr. Justice BRADLEY, to whom the preparation of the opinion in these cases was committed, to waive any elaboration of our views, and confine ourselves to the expression of the general grounds on which our decision proceeds.
 
 
 2
 These are applications for discharge by with of habeas corpus from arrest for alleged violations of an act of congress, approved September 19, 1890, entitled 'An act to amend certain sections of the Revised Statutes relating to lotteries, and for other purposes.' 26 St. p. 465.
 
 
 3
 The question for determination relates to the constitutionality of section 3894 of the Revised Statutes as amended by that act. In Ex parte Jackson, 96 U. S. 727, it was held that the power vested in congress to establish post-offices and postroads embraced the regulation of the entire postal system of the country, and that under it congress may designate what may be carried in the mail and what excluded; that in excluding various articles from the mails the object of congress is not to interfere with the freedom of the press or with any other rights of the people, but to refuse the facitities for the distribution of matter deemed injurious by congress to the public morals; and that the transportation in any other way of matters excluded from the mails would not be forbidden. Unless we are prepared to overrule that decision, it is decisive of the question before us.
 
 
 4
 It is argued that in Jackson's Case it was not urged that congress had no power to exclude lottery matter from the mails; but it is conceded that the point of want of power was passed upon in the opinion. This was necessarily so, for the real question was the existence of the power, and not the defective exercise of it. And it is a mistake to suppose that the conclusion there expressed was arrived at without deliberate consideration. It is insisted that the express powers of congress are limited in their exercise to the objects for which they were intrusted, and that, in order to justify congress in exercising any incidental or implied powers to carry into effect its express authority, it must appear that there is some relation between the means employed and the legitimare end. This is true; but, while the legitimate end of the exercise of the power in question is to furnish mail facilities for the people of the United States, it is also true that mail facilities are not required to be furnished for every purpose.
 
 
 5
 The states, before the Union was formed, could establish post-offices and postroads, and in doing so could bring into play the police power in the protection of their citizens from the use of the means so provided for purposes supposed to exert a demoralizing influence upon the people. When the power to establish postoffices and post-roads was surrendered to the congress, it was as a complete power; and the grant carried with it the right to exercise all the powers which made that power effective. It is not necessary that congress should have the power to deal with crime or immorality within the states in order to maintain that it possesses the power to forbid the use of the mails in aid of the perpetration of crime or immorality.
 
 
 6
 The argument that there is a distinction between mala prohibits and mala in se, and that congress might forbid the use of the mails in promotion of such acts as are universally regarded as mala in se, including all such crimes as murder, arson, burglars, etc., and the offense of circulating obscene books and papers, but cannot do so in respect of other matters which it might regard as criminal or immoral, but which it has no power itself to prohibit, involves a concession which is fatal to the contention of petitioners, since it would be for congress to determine what are within and what without the rule; but we think there is no room for such a distinction here, and that it must be left to congress, in the exercise of a sound discretion, to determine in what manner it will exercise the power it undoubtedly possesses.
 
 
 7
 We cannot regard the right to operate a lottery as a fundamental right infringed by the legislation in question; nor are we able to see that congress can be held, in its enactment, to have abridged the freedom of the press. The circulation of newspapers is not prohibited, but the government declines itself to become an agent in the circulation of printed matter which it regards as injurious to the people. The freedom of communication is not abridged, within the intent and meaning of the constitutional provision, unless congress is absolutely destitute of any discretion as to what shall or shall not be carried in the mails, and compelled arbitrarily to assist in the dissemination of matters condemned by its judgment through the governmental agencies which it controls. That power may be abused furnishes no ground for a denial of its existence, if government is to be maintained at all.
 
 
 8
 In short, we do not find sufficient grounds in the arguments of counsel, able and exhaustive as they have been, to induce us to change the views already expressed in the case to which we have referred. We adhere to the conclusion therein announced.
 
 
 9
 The writs of habeas corpus prayed for will therefore be denied, and the rules herein before entered discharged.