UNITED STATES of America,
Plaintiff,

v.

Thelma J. OLIVER, Defendant.
No. 19497.

United States District Court
W. D. Missouri, W. D.
May 11, 1956.

Edward L. Scheufler, U. S. Atty., by Horace W. Kimbrell, Asst. U. S. Atty., Kansas City, Mo., for plaintiff.

Francis L. Roach and Solbert M. Wasserstrom, Kansas City, Mo., for defendant.

DUNCAN, Chief Judge.

A complaint was filed against the defendant for knowingly depositing poisonous matter in the United States Mail, and for violating the Narcotics Act. Subsequently she appeared in court, and agreed that the District Attorney might proceed by information. Pursuant to that agreement, the District Attorney filed an information in three counts against her. The first count charged that the defendant caused to be deposited for mailing and delivery, a certain poison, to-wit, 824 grains of heroin hydrochloride to be delivered to a designated address in Denver, Colorado, in violation of § 1716 Title 18 U.S.Code. The second count charged that the defendant purchased and possessed the narcotic drugs described in Count I, in violation of § 4704(a) Title 26 U.S.C.A. The third count charged that the defendant knowingly received, concealed and possessed the narcotic drugs described in the other counts, after being imported and brought into the United States, in violation of § 174 Title 21 U.S.C.A.

The defendant did not enter a plea to any of the above counts, but filed a motion to suppress the evidence in the possession of Government agents, on the ground that it was obtained by an illegal search and seizure in violation of the Fourth Amendment to the Constitution of the United States. A jury was waived and the evidence was heard by

the court. It was stipulated that the court should consider the motion to suppress and the guilt or innocence of the defendant together, and that if the court should find that the search and seizure was legal and proper under the circumstances, the defendant would be found guilty, and if the search and seizure was in violation of the defendant's constitutional rights, then the defendant would be discharged.

The motion to suppress was supported by the affidavits of the defendant and her husband, Charles Lee Oliver, who is also charged with violation of the Narcotics Act in the United States District Court for the State of Colorado, at Denver.

There was little dispute as to the facts. On March 12, 1956, the defendant appeared at the window of the United States Post Office sub-station at 31st Street and Indiana Avenue in Kansas City, Missouri, and submitted a package for mailing which she requested to be sent air-mail special-delivery to the address of her husband under an assumed name in Denver, Colorado. In her testimony she stated that she told the clerk she wanted it to go first class, but on cross-examination, she was uncertain and indefinite in her statement in this respect,—and I think it may be assumed that her only statement to the clerk was that it be sent air-mail special-delivery. For this service she paid 6¢ per ounce or 36¢ for air-mail and 35¢ for special-delivery, making a total of 71¢.

When the defendant came into the post office, she was recognized by a mail carrier, who worked out of the station and who was also an undercover agent for the Bureau of Narcotics. He spoke to the defendant and exchanged some light conversation with her. When she went out of the post office, this employee of the Government told the clerk at the window that the defendant had been under surveillance for some time as a suspected peddler of narcotics, and that he possessed her picture as a means of identification.

Thereupon, the clerk at the window called the Superintendent of the station, to whom this information was conveyed, and the Superintendent thereupon opened the package in a manner which will be described later. He unwrapped it and found therein some greeting cards, and also two small white envelopes sealed in the usual manner by means of a sealing substance, each of which contained a white paper unsealed in which was wrapped heroin hydrochloride, the combined contents of the two envelopes equalling 824 grains. The Superintendent immediately communicated with the office of the Bureau of Narcotics in Kansas City and an agent of that office proceeded to the Post Office where he made a field test of the substance and determined that it was heroin hydrochloride.

The heroin was replaced in the envelopes as it was found, and sealed by means of scotch tape, replaced in the original package, re-tied as originally and forwarded on to its destination in Denver. It being after court hours, the narcotics agent proceeded to the home of the United States Commissioner, where he filed a complaint against the defendant and obtained a warrant for her arrest. In an attempt to serve the warrant, it was ascertained that the defendant had left for Denver on an evening train. Thereupon, the narcotics agent communicated with the Denver office, advising them of the circumstances and advised that the Kansas City office held a warrant for the arrest of the defendant which was being forwarded to them in Denver.

The hotel address to which the narcotics were to be delivered, was kept under observation, and when the package was sought to be delivered on March 13, 1956, the defendant's husband was not present. A notice of the attempt to deliver the package was left at the hotel, with the information that it could be obtained at the Post Office. The Post Office delivery window was also kept under observation. When the defendant's husband presented himself at the window and requested delivery of the package, the narcotics agent placed him under arrest.

The narcotics agent then proceeded to the hotel where the defendant was staying and placed defendant under arrest also, without possession of the warrant, although it was then in the mail for delivery. He also searched the defendant's room there, but found no other narcotics. The defendant was returned to Kansas City, and her husband proceeded against in Denver. The search admittedly was made without a search warrant, and it is the contention of the defendant that her constitutional rights have been violated, and that the contents of the package may not now be used against her in this proceeding.

The package was approximately 2½x 4x5 inches in size, wrapped in ordinary wrapping paper and secured by ordinary wrapping string. There is some dispute between defendant and the parties who unwrapped it, as to the method by which it was secured, but I think the difference between the testimony of the two parties is not material. The package was not "sealed" in the sense in which we ordinarily understand that term, i. e., wax, mucilage or other sealing substance. The agent in charge testified that in the opening process, he simply untied the knots in the string and when the package was tied up again, they used the same string, and that it was secured and tied in the same manner.

The parties have filed briefs in support of their respective positions. Numerous rules and regulations of the Post Office Department as to the method and manner of handling mail and the classifications thereof were introduced in evidence. Of course, such rules and regulations have the force of law and are binding upon all parties, if they are within the provisions of the law with reference to the handling of mail, and are not violative of the constitutional rights of citizens.

Regulation 331.11 provides:

"Do not break, or permit to be broken, the seal of first-class mail or open unsealed first-class letters or parcels while in the custody of the Postal Service, unless you are employed for that purpose in a dead letter branch. You must observe this rule always, even though you know the letter contains unmailable matter, criminal matter, or evidence for the conviction of a crime."

Regulation 331.12 provides:

"Unsealed Matter. All unsealed matter, except matter bearing first-class postage, may be opened for inspection if the contents are suspected to be unmailable. This also applies to third- and fourth-class sealed matter bearing the inscription *Postmaster: This parcel may be opened for postal inspection if necessary.*"

A number of other regulations were cited to the court, most of which, it would seem, pertain to the method of handling mail, how it shall be wrapped for transmission, and the fixing of charges therefor. Those regulations do not help us here, when we consider the fact that all air-mail is considered to be first-class mail for the purpose of transportation charges, under the regulations. This is true whether the matter mailed be letters or merchandise. There is a distinction however, between the rates charged for special-delivery air-mail and parcels or merchandise. The charges for the latter being in excess of that for the former, and the higher rate was charged the defendant for the delivery of her package, although she states that she was not advised at the time that the merchandise rate was being charged. The postal clerk testified that he applied the rate upon the theory that the package contained merchandise.

Because of the contents of the package, we may proceed upon the assumption that the defendant did not intend that the package should be subject to inspection by the Post Office authorities, as is provided in certain rules and regulations of the department with respect to mail in classes below first-class mail.

The matter has been before the courts but infrequently, and the only authority that has been presented to the court on the subject is Ex parte Jackson, 96 U.S. 727, 24 L.Ed. 877, an opinion by Mr. Justice Field. Without denying the principle expressed in that case, it may be said that much change has been made in the method of handling mail and the types and classifications of mail since the decision in that case in 1877. However, what was said in this respect by Judge Field then, might well be repeated today. The court said:

"What should be mailable has varied at different times, changing with the facility of transportation over the post-roads. At one time, only letters, newspapers, magazines, pamphlets, and other printed matter, not exceeding eight ounces in weight, were carried; afterwards books were added to the list; and now small packages of merchandise, not exceeding a prescribed weight, as well as books and printed matter of all kinds, are transported in the mail."

Of course, if Judge Field could see what comes through the mails today, he might well have added many additional objects to the list. Mr. Justice Field further stated:

" * * * In their enforcement, a distinction is to be made between different kinds of mail matter,—between what is intended to be kept free from inspection, such as letters, and sealed packages, subject to letter postage; and what is open to inspection, such as newspapers, magazines, pamphlets, and other printed matter, purposely left in a condition to be examined. *Letters and sealed packages of this kind in the mail are as fully guarded from examination and inspection, except as to their outward form and weight, as if they were retained by the parties forwarding them in their own domiciles. The constitutional guaranty of the right of the people to be se-*

*cure in their papers against unreasonable searches and seizures extends to their papers, thus closed against inspection, wherever they may be.* Whilst in the mail, they can only be opened and examined under like warrant, issued upon similar oath or affirmation, particularly describing the thing to be seized, as is required when papers are subjected to search in one's own household. No law of Congress can place in the hands of officials connected with the postal service any authority to invade the secrecy of letters and such sealed packages in the mail; and all regulations adopted as to mail matter of this kind must be in subordination to the great principle embodied in the fourth amendment of the Constitution." (Emphasis supplied.)

§ 1717(c) Title 18 U.S.C.A. provides:

"No person other than a duly authorized employee of the Dead Letter Office, or other person upon a search warrant authorized by law, shall open any letter not addressed to himself."

It seems to be the contention of the Government that the Post Office has the right to open for inspection, any type of mail, other than first-class mail, which is sealed in the ordinary accepted understanding of that term, which would mean letters, and in this connection, we are cited to Regulation 131.21 which provides:

"Description
First-class mail includes:
a. Letters.
b. Postal and post cards.
c. All matter wholly or partly in writing, except authorized additions to second-, third-, and fourth-class mail.
d. Matter sealed or closed against inspection."

■■ In interpreting the regulations and the law, including the constitutional

rights of the owners of mail to be protected against unlawful searches, we cannot be controlled exclusively by the classifications which have been assigned to the mail, and particularly to the method of sealing mail against inspection. Considering this case, we must therefore exclude the ordinary, accepted definitions of first-class mail or sealed matter. The court must know what the public knows generally, and take judicial notice thereof, that a very large percentage of the packages which proceed through the mail daily are sealed, and by "sealed" we mean some sort of adhesive substance is used to secure the mailed package. This includes fibre wrapping substances, gummed paper which secures many mailed packages. Of course, in order to benefit from the lesser rates provided by the regulations, it is necessary that the sender shall agree that such packages may be opened for the purpose of inspection, and ordinarily, without such markings upon the package, or label placed thereon, the Post Office Department would not accept such a package in a class lower than first-class mail.

Therefore, in preservation of the rights of those who are protected by the Constitution against unlawful searches, I think we must determine the question of whether or not the package was intentionally secured against inspection, or whether the package leaves the impression that it is not so securely wrapped or fastened as to evidence a clear intention on the part of the sender that it may be opened for inspection because of the classification which it takes for the purpose of transportation and delivery. Again referring to the air-mail regulation 136.22 which provides:

"Mail of all classes, except that which may be damaged by low temperatures or high altitudes, is accepted for airmail."

Also 136.23 which provides:

"a. Postage is charged on airmail (except postal and post cards) according to weight and not according to class of mail."

And 166.21 which provides:

"Special-delivery fees on airmail are chargeable according to the class of matter being transported."

Under the regulations, all air-mail is classified as first-class mail. But, in the charge for special-delivery of air-mail, a distinction is made between different types. For ordinary first class mail matter, such as sealed letters, 20¢ is charged —for all other types of such mail, 35¢ is charged. The air-mail rate is 6¢ per ounce, regardless of type or kind of mail being transported, and from the amount charged for the special-delivery of the package, it was clear that it was accepted as merchandise.

The defendant insists that the sealed envelopes within the wrapped package were also of such a nature and character as would preclude the right of the authorities to inspect their contents, even after they had opened the package itself, because they were securely sealed by means of adhesive substance.

It seems to me that the right of the Post Office to open mail or packages for inspection or search may not be definitely extended to all mail matter, other than that which the Post Office itself has classified as first-class mail. Bearing in mind the constitutional rights of the senders of mail, as interpreted by Mr. Justice Field, and in fact, that of the Post Office Department itself, I cannot escape the conclusion that there may be mail matter or packages in some other classifications which may be so secured as to wrapping, that such mail matter could not be easily or readily opened, and if such mail matter in such condition is accepted by the Post Office Department without reservation as to its right to open and inspect, then to open such mail matter would be a violation of the sender's constitutional rights.

It is true that the Post Office may refuse to accept any such mail matter without the expressed right to open it for inspection. The sender of mail may not avail himself of the advantages

of a lower classification than first-class without submitting to the established regulations with respect to such mail matter, which includes the right to open and inspect, even though the package may be sealed, if such right is reserved by the Post Office. One cannot invoke the protection of the Constitution without conforming to its legal requirements.

 The question before the court is certainly not without difficulty. The hundreds of millions of pieces of mail of all types and descriptions which are offered to the Post Office daily for transportation, necessarily present many inspection complications and difficulties in the enforcement of the department's rules and regulations, as well as the protection of the rights of those who use the facilities of the United States mails. Certainly one cannot use the mail for violations of criminal laws and then rely upon his constitutional guarantees to protect him, unless he complies with all of the reasonable rules and regulations, not only of the Post Office Department, but of reason in the manner and method of preparation of such a package for mailing, so that little doubt could be left in the mind of the Post Office official that the package comes within the classification that prohibits inspection.

Certainly, if those engaged in narcotics traffic—and I am speaking abstractly— might use a candy box wrapped in brown paper, tied with string for the purpose of transporting marihuana from one peddler to another without danger or right of inspection, it would be a very difficult matter for the authorities ever to interfere with such illegal traffic through the mails. On the other hand, if the package is wrapped, sealed and evidences the clear intention that it is not to be opened and cannot be opened without destroying its form and breaking the seal, then it must be admitted that under the rule as laid down by Judge Field in Ex Parte Jackson, it cannot be touched without a warrant, even though the officials know it contains contraband.

 I am convinced that the defendant intended that the package should go first-class. It was probably through her ignorance of the regulations that the package was not sealed in the ordinarily accepted understanding of that term. It was undoubtedly her intention and her thought that the package would not be opened by the postal authorities, and, of course, those who did open the package, knew, for the very reason for which they opened it, that it was against her will that it was done. The clerk who opened the package testified that the process of opening was a simple one—a mere matter of a few seconds in untying the knots which secured it. Repeating, the classification for air-mail does not help us because all such mail is first-class. I must come to the conclusion, therefore, that the package was not "sealed" or "secured" against the right of the department to open and inspect it, under the law, insofar as its exterior appearance was concerned.

 That brings us to the question of whether or not, having once rightfully opened the package, the clerk had a right to proceed in breaking the seal on the small envelopes that were contained therein. It is my view that the clerk had such right, that what may be contained in the package, is not a part of it for the purpose of classification and the right to open and inspect. The fact that the inner package was sealed does not make it first-class mail and free from the right of inspection, and once the package, which determines the classification, or the right to open has been secured, that which is in it likewise may be inspected.

 I must conclude therefore, that the package was not secured against inspection, and that the authorities had the right to search it. Having so determined, the evidence which was obtained thereby was legally and properly discovered, and may be used in evidence against the defendant.

The "Motion to Suppress the Evidence" as to the defendant Thelma J.

Oliver is overruled, and in view of the stipulation, the court must find the defendant guilty on each of the three counts, as charged in the information.

Lastly, we come to the question of the request of the defendant's husband, Charles Lee Oliver, to suppress the evidence as to him, recalling that he has been charged with the same offense (except the placing of the poisonous matter in the mail) in the United States District Court in Denver, Colorado, and he has filed a separate affidavit which is similar to that filed by the defendant, in which he claims joint ownership of the heroin, and cites the court to Rule 41 Fed.Rules Crim.Proc., 18 U.S.C.A., which provides:

> "A person aggrieved by an unlawful *search and seizure* may move the district court for the district, in which the property was *seized* for the return of the property and to suppress for use as evidence anything so obtained * * *." (Emphasis supplied.)

It is my belief that this court has no jurisdiction to pass upon the question. The rule uses the word "seized". There was no seizure in this jurisdiction. There was a search here, and after search and ascertainment of the contents of the package, it was restored to its original condition and sent through the mail to the addressee, and when it was delivered to him, it was then seized by the narcotics agent, the contents again removed and sent to a Government chemist for final analysis.

It is my conclusion that the seizure not having occurred in this jurisdiction, this court is not vested with authority to pass upon the question. It quite naturally follows that if this court would assume to pass on it, the ruling would be the same as that with respect to the defendant, but it is a question which I feel should be passed upon in the court in which the charge against defendant's husband is pending.