THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* JAN S. BOGARD and MARY BOGARD, Defendants and Appellants.

No. CR-71-89.    Decided April 6, 1972.

566

*Gerardo Ortiz del Rivero* for appellants. *Gilberto Gierbolini, Solicitor General,* and *Candita R. Orlandi, Assistant Solicitor General,* for The People.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

Appellants, Jan S. Bogard and Mary Bogard, were jointly accused with another person of two violations of the Narcotics Act of Puerto Rico, consisting in (1) having in their possession and control the narcotic drug known as marihuana, and (2) concealing and transporting said drug.

A motion to suppress evidence filed by the defense was denied. The trial having been held by the court without a jury, after appellants had validly waived their right to a trial by jury, they were found guilty and sentenced to serve, concurrently, from 6 to 9 years on each count. The suspension of the sentence was ordered pursuant to the provisions of Act No. 259 of 1946 on Suspended Sentences.

In this appeal they assign the commission of the following sole error:

"The trial court ERRED in concluding that the search in this case was lawful and reasonable, notwithstanding the fact that the method used by the undercover agents to obtain the grounds which gave rise to the issuance of the search warrant constituted an unlawful and unreasonable search of the defendants in violation of Article II, Section 10, of the Constitution of

the Commonwealth of Puerto Rico and of the Fourth Amendment of the Constitution of the United States."

A magistrate issued a search warrant to search residence 122-A, 122 Venus Street, Atlantic View Development, Carolina, Puerto Rico and its premises.

The method of investigation used by the undercover agents, to which appellants refer, is described in the sworn statement given by agent Félix Fuentes Ortega, from which we copy below the pertinent part:

"On March 20, 1968, I was assigned to make an investigation in regard to an alleged sowing of marihuana in the yard of residence 122-A of Venus Street, Atlantic View Development, Carolina, Puerto Rico. At about 10:00 a.m. that day, I looked towards the yard of the aforementioned residence and I was able to observe three plants about two feet tall and with thin and serrated leaves, whose physical configuration is that of the marihuana plant. That on March 21, 1968, I kept watching towards the yard of residence 122-A of Venus Street, Atlantic View, Carolina, Puerto Rico, and about 9:30 a.m. I saw when two men and a woman came out of the back door of the aforementioned residence and went to the place where the marihuana plants were planted. The descriptions of these individuals are the following: No. 1—Male, 21 years old, approximately, 5' 7" tall, white, light brown hair, 150 pounds, approximately, dressed in shorts, shirt, and was wearing light color glasses; No. 2—Male, 21 years old, approximately, dark wavy hair, white, blue eyes, mustache and beard, 5' 8" tall, 160 pounds, wearing a bathing suit and white undershirt; No. 3—Female, 18 years old, height 5' 5", white, short blond hair, 115 pounds, wearing short jeans and short red blouse.

"The man, whom I indicate as No. 1, took some leaves of the marihuana plant and then they went to a small house that is in the yard and then they all entered residence 122-A. That same day, March 21, 1968, at about 2:30 p.m. I observed that the woman, whom I describe as No. 3, came down from apartment 122-A with a plastic bottle and poured a clear liquid on the three marihuana plants. That I can assure that the three plants are marihuana plants as a result of my experience in investigations of the unlawful trafficking in drugs where I have intervened

before with the sowing of marihuana; as well as from the training received in the Special Investigations Office of the Department of the Treasury and the training received in the Federal School of Narcotics in Washington, D.C. Residence 122-A is located in a 2-story, concrete building, with three apartments, 122-A, 122-B, and 122-C. Said building has a front stairway, the address is 122 Venus Street, Atlantic View, Carolina, Puerto Rico. Apartment 122-A is on the ground floor of the building, and facing it by Venus Street, it is to the right. It has a front and a back door. On the right-hand side it has a carport and Miami type windows. The back door leads to the yard which is partially fenced with chain link fencing. On the patio there is a small frame house. Apartment 122-A is bounded on the north by Venus Street, on the south by the yards of the residences of Miss Ada Piña and the Llompart Tavarez family, on the east by apartment 122-C, and on the west by the residence of Jorge Vázquez.

"As a result of the observations I made during March 20 and 21, 1968, I am convinced that in the yard and in the residence 122-A there is marihuana in violation of the Narcotics Act of Puerto Rico, and I respectfully request the issuance of a search warrant for apartment 122-A of Venus Street, Atlantic View, Carolina, Puerto Rico, and to seize there any article in violation of the Narcotics Act of Puerto Rico.

"THAT everything set forth herein is the truth." (Footnote 2, Solicitor General's Report.)

The search warrant having been executed, they seized a stalk and 5 plants of marihuana, a plastic bag with grass and a cigarette, and a bottle with marihuana leaves, a plastic bottle with two cigarettes and a marihuana butt, a white envelope with marihuana seeds, and two pipes which resulted positive of marihuana.

■ At the trial, undercover agent Fuentes Ortega testified that from the patio of the Piña family, from whom they asked permission therefor, they observed through a cyclone fence what was sowed on the patio of residence 122-A of Venus Street, as well as the movements of its residents in said patio.

Appellants' contention is to the effect that the action of agent Fuentes Ortega, by spying on the patio of said appellants, constitutes an unlawful search. It also calls our attention to the fact that the agent did not state in his sworn statement the means he used to observe the patio of appellants' residence.

As to the sufficiency of the sworn statement, appellants cite the case of *People* v. *Superior Court*, 91 P.R.R. 19 (1964), where it is said that in *Aguilar* v. *Texas*, 378 U.S. 108, it was said that "although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant . . . the magistrate must be informed of some of the underlying circumstances." In the same case of *People* v. *Superior Court, supra*, citing other cases of the Supreme Court of the United States and Federal courts, we said: "In determining what is probable cause, we are not called upon to determine whether the offense charged has in fact been committed. We are concerned only with the question whether the affiant had reasonable grounds at the time of his affidavit and the issuance of the warrant for the belief that the law was being violated on the premises to be searched; and if the apparent facts set out in the affidavit are such that a reasonably discreet and prudent man would be led to believe that there was a commission of the offense charged, there is probable cause justifying the issuance of a warrant." We have also held that in cases involving searches and seizures, a technical and restricted interpretation of the officer's statement is not necessary. *People* v. *Soto Zaragoza*, 99 P.R.R. 739 (1971).

The sworn statement given by undercover agent Fuentes Ortega, complies with law and the case law. The undercover agent stated that the observations he made were the result of his watchfulness towards the patio of defendants' residence. It was sufficient in order to inform the magis-

trate how he obtained the information about the facts which justified the issuance of the search warrant.[1]

■ In regard to their principal contention, appellants rely fundamentally on the cases of *Katz* v. *United States*, 389 U.S. 347; *Mancusi* v. *De Forte*, 392 U.S. 364, and on other cases of this Court which are clearly unapplicable. In the *Katz* case, the government agents tapped a public telephone, although without physically penetrating into the telephone booth, in order to listen and record defendant's telephone conversations. It was said in that case that what a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection, but what that person seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected, as for example, what the person carries with him in a public automobile, *Rios* v. *United States*, 364 U.S. 253, 4 L.Ed.2d 1688, or the letters and packets that the person deposits in the mail, *Ex parte Jackson*, 96 U.S. 727, 24 L.Ed. 877. In the *Katz* case, the doctrine to the effect that in order to invoke the protection of the Fourth Amendment there should be a trespass of the place or premises is abandoned.[2] In the *Mancusi* case, it was held that it was unlawful to seize papers without a search warrant in a large office used by a union official and which he shared with other persons, even when the papers were not in the part of the office reserved for the official's personal use. It has been said that in this area of searches and seizures, each case should be tried on the basis of its own particular facts. *Lewis* v. *United States*, 385 U.S. 206, 17 L.Ed.2d 312; *Ker* v. *California*, 374 U.S. 23, 10 L.Ed. 2d 726.

---

[1] See, *United States* v. *Scolnick*, 392 F.2d 320, *cert. den.*, 329 U.S. 931, 20 L.Ed.2d 1389, in regard to the fact that the sworn statement does not have to contain elaborate and specific questions.

[2] See, however, *United States* v. *White*, 401 U.S. 745.

■ In the recent case of *White* v. *United States*, 401 U.S. 745, it was said that pursuant to the principles announced in *Katz*, the problem consists in determining what expectations of privacy are constitutionally justifiable, that is, which expectations would be protected by the Fourth Amendment in the absence of a search warrant.

■ The expectation of privacy invoked by appellants in the instant case is not constitutionally justified, therefore not protected by the Fourth Amendment. The patio of appellants' residence where they kept the sowing of the marihuana plants is divided from the patio of the Piña family's residence by a cyclone fence which allows visibility from one patio to another. The sowings of marihuana were visible to the Piña family, as well as to their guests, and to any other person who with said family's permission entered into their patio.

The argument to the effect that the Piña family authorized the search of appellants' residence cannot be sustained. From the place where the undercover agents stood to make their observations, they could see what any other person standing in said patio could see through the cyclone fence. Under such circumstances, appellants could not expect that the activities which they carried out in their patio could be kept private. The undercover agents were legally in the patio of the Piña family and they were not forced to close their eyes from seeing what could be seen from there. See *People* v. *Boone*, 82 Cal. Reptr. 398 and cases therein cited.

The error assigned not having been committed, the judgments appealed from will be affirmed.

Mr. Chief Justice Negrón Fernández took no part in the decision of this case.