183 N.J. Super. 264 (1982)
443 A.2d 787
STATE OF NEW JERSEY, PLAINTIFF,
v.
TODAY NEWSPAPERS, DEFENDANT.
Superior Court of New Jersey, Law Division Bergen County.
Decided January 6, 1982.
*266 John P. Paxton, Municipal Prosecutor of Franklin Lakes, N.J., for the State.
Anschelewitz, Barr, Ansell & Bonello, for Defendant (James M. McGovern, Jr., appearing).
MINUSKIN, J.S.C.
The question properly before this court on an appeal by Today Newspapers from the Franklin Lakes Municipal Court is whether Franklin Lakes Ordinance § 88-8(c) impermissibly infringes on the First Amendment right of Today Newspapers to distribute its weekly paper. R. 3:10-2, R. 3:23, R. 7:4-2(e), State v. Barcheski, 181 N.J. Super. 34, 38-39 (App.Div. 1981).
Ordinance § 88-8(c) provides, in pertinent part: "No person shall throw, deposit or distribute any commercial or non-commercial handbill: ... (c) in or upon any private premises which are temporarily or continuously uninhabited or vacant."
Pursuant to this ordinance, Today Newspapers was served with three separate summonses. The parties stipulate that with regard to Summonses 323 and 325 it would appear that defendant, through its agents, caused copies of the Today Newspaper to be deposited on vacant private property located at 706 Orchard Lane on March 18 and 25, 1981, respectively. Defendant had no actual knowledge that the premises were vacant. With regard to Summons 321, the parties stipulated that defendant had caused, through agents, the placement of numerous copies of Today Newspaper on vacant private property known as 616 Osio Lane.
The First Amendment states that "Congress shall make no law ... abridging the freedom of speech or the press...." U.S.Const., Amend. I. There is similar language in the New Jersey Constitution. N.J.Const. (1947), Art. I, par. 6.
The court is compelled to weigh the First Amendment mandate, which embodies one of the fundamental philosophical principles of our society, against the legitimate police functions *267 exercised by all levels of government in a sincere effort to promote and preserve the day-to-day quality of life.
The First Amendment is the polestar in the constellation of ideals that has guided this country from pre-Revolutionary to modern times. The preeminence of the First Amendment is reflected in the maxim by James Madison in a speech before Congress in 1794 in which he stated: "If we advert to the nature of Republican Government we shall find that the censorial power is in the people over the Government, and not the Government over the people." Brant, "The Bill of Rights," 235 (1965). See, Absecon v. Vettese, 13 N.J. 581 (1953).
Although the First Amendment is phrased in absolute terms, it is clear, based on historical and judicial precedent, that certain types of speech, e.g. obscenity, are beyond the pale of First Amendment protection. Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957). However, since In Matter of Jackson, 96 U.S. 727, 24 L.Ed. 877 (1878), it has been settled that "liberty of circulating is essential to the freedom [of the press] as liberty of publishing; indeed, without the circulation, the publishing would be of little value." Id. at 753. See Schaad v. Ocean Grove Camp Meeting Ass'n, 72 N.J. 237 (1977). This truth was reiterated in Toms River Publishing Co. v. Manasquan, 127 N.J. Super. 176 (Ch.Div. 1974):
The right to distribute, circulate, or otherwise disseminate ideas and written materials has long been recognized to constitute an integral part of the right of free speech and press. Both rights are clearly fundamental ones protected by the First Amendment. Martin v. Struthers, 319 U.S. 141, 143, 63 S.Ct. 862 [863], 87 L.Ed. 1313 (1943), Lovell v. Griffin, 303 U.S. 444, 450-452, 58 S.Ct. 666 [668-669], 82 L.Ed. 949 (1938). The freedom of speech and press embraces the right to distribute literature and necessarily protects the right to receive it. Martin v. Struthers, supra, 319 U.S. at 143, 63 S.Ct. 862 [863]. Accord, Marsh v. Alabama, 326 U.S. 501, 505, 66 S.Ct. 276 [278], 90 L.Ed. 265 (1946). [at 182]
The fact that Today Newspaper is a "shoppers'" weekly containing mostly advertising, is irrelevant to this court's analysis. In Paton v. La Prade, 469 F. Supp. 773 (D.C.N.J. 1978), it was noted that the "[United States] Supreme Court has held that the public has the right to receive information amounting *268 to mere commercial speech, e.g., prescription drug prices and lawyers fees. Bates v. State Bar of Arizona, 433 U.S. 350, 363-364, 97 S.Ct. 2691, 2698, 2699, 53 L.Ed.2d 810 (1977)." Id. at 777, n. 12. Thus, the present controversy is within the purview of First Amendment protection.
The balance between the First Amendment and the borough's legitimate police powers is not evenly weighted. In order to effectuate the First Amendment imperative and its historical and philosophical underpinnings as expressed in James Madison's maxim quoted above, the courts have developed corollaries to tip the scale to favor First Amendment protection.
First, the court notes that "[w]hen First Amendment considerations are involved the normal presumptions in favor of constitutional validity is abrogated." Paton v. La Prade, supra at 778. The presumption of constitutionality placed on most statutes is thus inverted. Recently, our Supreme Court has clearly delineated the manner in which this presumption of unconstitutionality may be overcome and, in so stating, expresses another corollary of First Amendment analysis. The Supreme Court wrote in New Jersey Chamber of Commerce v. New Jersey Election Law Enforcement Comm'n, 82 N.J. 57 (1980):
The assessment of the constitutionality of [a] statute encroaching upon First Amendment interests, turns on whether there is a compelling state interest to be served by the statute and a substantial connection between the compelling governmental interest and the statutory regulation; the compelling state interest must clearly outweigh the "repressive effect" on expressional or association rights engendered by the application of the statute. [at 70]
Defendant does not challenge the constitutional status of the professed benign interest of the municipality in preventing burglaries as well as controlling litter. It is defendant's contention, however, that the means used to achieve the constitutionally premissible goal is violative of Today Newspapers' First Amendment rights. This argument is predicated on the belief that the ordinance under consideration is unconstitutionally vague and thus provides insufficient notice of the prohibited *269 activity. It has been generally held, as a matter of due process, that "[n]o one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the state commands or forbids." Hynes v. Mayor of Oradell, 425 U.S. 610, 96 S.Ct. 1755, 48 L.Ed.2d 243 (1976), citing Lanzetta v. New Jersey, 306 U.S. 451, 453, 59 S.Ct. 618, 619, 83 L.Ed. 888 (1939).
The policy underlying the vagueness doctrine is "to insure that officials are not vested with a potentially abusive degree of discretion in enforcing the law." Paton, supra at 779. See Smith v. Goguen, 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974). This concern is particularly poignant in the area of First Amendment rights where the protected activity of disseminating written material by defendant, as well as others, may be trampled by the arbitrary application of an ordinance's sanctions. Grayned v. City of Rockford, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). Accordingly, the next corollary developed from case law is that "it has become axiomatic that `precision of regulation must be the touchstone in an area so closely touching our most precious freedoms.'" U.S. v. Robel, 389 U.S. 258, 265, 88 S.Ct. 419, 424, 19 L.Ed.2d 508 (1968), citing NAACP v. Button, 371 U.S. 415, 438, 83 S.Ct. 328, 340, 9 L.Ed.2d 405 (1963). See Village of Schaumburg v. Citizens for a Better Environment, 444 U.S. 620, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980); Keyishan v. Board of Regents, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967). Indeed, "a man may the less be required to act at his peril here, because the freedom of ideas may be the loser." Smith v. California, 361 U.S. 147, 151, 80 S.Ct. 215, 217, 4 L.Ed.2d 205 (1959); Buckley v. Valeo, 424 U.S. 1, 76-82, 96 S.Ct. 612, 662-664, 46 L.Ed.2d 659 (1976); Broadrich v. Oklahoma, 413 U.S. 601, 611-612, 93 S.Ct. 2908, 2915-2916, 37 L.Ed.2d 830 (1973).
Franklin Lakes Ordinance § 88-8(c) does not give any indication of what is meant by the phrase "temporarily or continuously uninhabited or vacant." Is a home which is unoccupied *270 for one hour, half a day or three days, "temporarily or continuously unoccupied"? The very indicia of occupation, e.g., lights, radios, T.V. are commonly used to thwart burglars while the home is in reality unoccupied. Even the most conscientious delivery person could be lulled into thinking the home was occupied. Conversely, a quiet house does not necessarily mean that it is unoccupied. Moreover, to implicitly compel a doorbell to be rung in order to see if anyone is there, is fraught with the danger of confirming nonoccupancy in the mind of an individual truly intent on burglary. In fact, many municipalities have faced First Amendment challenges when they sought to prevent door-to-door political canvassing in the belief that there was a danger of criminal intrusion when strangers were allowed to ring doorbells. See Hynes v. Mayor of Oradell, supra; Martin v. Struthers, 319 U.S. 141, 144, 63 S.Ct. 862, 863, 87 L.Ed. 1313 (1943).
There is no doubt that reasonable "time, place and manner regulations may be imposed by the state on First Amendment rights." Heffron v. International Society for Krishna Consciousness, Inc., 452 U.S. 640, 647, 101 S.Ct. 2559, 2563, 69 L.Ed.2d 298 (1981); State v. Lashinsky, 81 N.J. 1 (1979). However, contrary to the State's view, the above statement is not a magic talisman which shields the Franklin Lakes ordinance from First Amendment scrutiny. Even if the ordinance in question is "justified without reference to the content of the regulated speech" and "serves a significant governmental interest," as required in Heffron, supra, it must fall on the basis that "men of common intelligence must necessarily guess at its meaning." Connally v. General Construction Co., 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926); State v. Lashinsky, supra, 81 N.J. at 17. This lack of notice, in turn, inhibits the exercise of First Amendment rights since defendant is clearly acting at its peril by delivering its newspaper. Even more ominous in terms of First Amendment rights is that festering within the ordinance's vague terminology is the potential for the unfettered discretion of local authorities to ban the First Amendment rights to disseminate *271 and receive only a select group of literature. The ordinance, in the guise of a valid time, place and manner regulation, would thus allow for covert forms of control over the content or subject matter of the newspapers delivered in Franklin Lakes.
Finally, the ordinance violates the requirements of a valid time, place and manner restriction by not leaving "`... open ample alternative channels for communications of information." Heffron, supra 452 U.S. at 648, 101 S.Ct. at 2564 (emphasis supplied). In Heffron the Minnesota State Fair Rule 6.05 did not "prevent organizational representatives from walking around the fairgrounds and communicating the organization's views with fair patrons in face-to-face discussions, it does require that any exhibitor conduct sales, distribution and fund solicitation operations from a booth rented from the Society." Id. 452 U.S. at 643-644, 101 S.Ct. at 2562. The Supreme Court found that under the facts of that case the members of ISKCON had ample opportunity "to reach the minds of willing listeners" since there was "opportunity to win their attention," despite the effects of the Rule. Id. 452 U.S. at 655, 101 S.Ct. at 2567, citation omitted.
In the present case the State has not shown that there were "ample" alternatives available to Today Newspapers, within Franklin Lakes, to disseminate its newspaper. The possibility of mailing the newspaper was alluded to before the court. However, if defendant assumed the expense of mailing the newspapers, the burden would shift to the homeowner or lessee to cancel the delivery of his mail. It is more sensible as well as significantly less intrusive on First Amendment rights to place the initial onous on the homeowner or lessee to contact Today Newspapers directly and cancel the paper either permanently or temporarily, or in the alternative, to simply arrange with a neighbor to pick up the newspaper during periods of nonoccupancy. See, also, Toms River Publishing Co. v. Manesquan, supra.
*272 Thus, Ordinance § 88-8(c), purported by the State to be a valid time, place and manner regulation, is in fact constitutionally flawed when placed in the piercing light of First Amendment analysis. The vagueness of the ordinance impermissibly inhibits the symbiotic right to Today Newspapers and the public, respectively, to disseminate and receive information.
Judgment is entered for defendant.